TATUM BROS. REAL ESTATE & INVESTMENT COMPANY, A CORPORATION, *Plaintiff in Error*, v. P. L. WATSON, *Defendant in Error*.

## Division B.

## Opinion Filed July 19, 1926.

1. Malicious prosecution, a very ancient action, regarded as a remedy, is a distinctive action *ex delicto* for the recovery of damages to person, property, or reputation, shown to have proximately resulted from a previous civil or criminal proceeding, which was commenced or continued without probable cause, but with malice, and which has terminated unsuccessfully.

2. The gist of the action of malicious prosecution is that plaintiff has been without probable cause and maliciously made the subject of legal process resulting in his damage.

3. An action for maliciously putting the law in motion lies in all cases where there is a concurrence of the following elements: (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its *bona fide* termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of

malice therein.   (6) Damage conforming to legal standards resulting to plaintiff.   If any one of these elements is lacking, the result is fatal to the action.

4. An action for malicious prosecution is an action in tort to recover damages for the institution, maliciously and without probable cause, of a suit which has terminated in favor of the defendant therein.

5. An action for damages for the malicious prosecution of civil suits disputing the title to lands is not an action for damages for injury to the person, nor for detention, conversion or injury to personal property.

6. While the word "property", in common use, is applied to the tangible physical thing commonly called property, in the law it is not the material object but the right and interest which one has in it, to the exclusion of others, which constitutes property.

7. Property, in a legal sense, consists in the domination which is rightfully and lawfully obtained over a material thing, with the right to its use, enjoyment and disposition.

8. In an action for malicious prosecution the burden of proving all the essential elements of the cause of action, including the concurrence of malice and want of probable cause, is on the plaintiff; and to sustain a recovery all such essential elements must be established by a preponderance of the evidence.

9. "To make out a cause of action in malicious prosecution, malice and want of probable cause must concur.  Want of probable cause cannot be inferred from malice.  But malice may be implied or inferred as a fact from want of probable cause."

10. "The jury may infer malice from want of probable cause, and it has been said that ordinarily it does so.  Nevertheless, the inference is not one of law but merely a presumption of fact

which may be rebutted and is one which the jury is not required to draw, and which it should not draw if other facts disclosed by the evidence lead to a different conclusion."

11.  In an action for malicious prosecution, a charge that "if you believe from a preponderance of the evidence that there was a total want of probable cause  *  *  *  your verdict should be for the plaintiff" is erroneous in that it requires a finding for the plaintiff whether the jury did or did not infer from a total want of probable cause, if so found by them, that the prosecution complained of was malicious.

12.  Where the evidence is inclusive, a materially erroneous charge may be harmful and reversible error.

A Writ of Error to the Circuit Court for Dade County; H. F. Atkinson, Judge.

Judgment reversed.

*Shutts & Bowen* and *John S. Benz,* for Plaintiff in Error.

*H. Pierre Branning* and *S. P. Robineau,* for Defendant in Error.

WHITFIELD, P. J.—The second amended declaration herein, filed April 2, 1923, alleges that on or about September 8, 1917, the plaintiff, Watson, did then and there become the owner of, and a party to a contract (Exhibit A), for the purchase and sale of described land; that the plaintiff being desirous of disposing of his right, title and interest in and to the aforesaid contract or the property therein described in some manner by which he could raise certain funds which he at that time was in need of for other purposes, did offer said property for sale at the price of $60,000.00 and did on or about the 15th day of November, 1917, grant and give unto one W. I. Phillips an option to

purchase said property at the price of $60,000.00, a copy
of which option is hereby attached and marked Exhibit
"B," which said option was thereafter assigned by the
said W. I. Phillips unto one Ovid G. Lindsay; that there-
after the said Ovid G. Lindsay and the said W. I. Phillips
became ready, able and willing to purchase said property
upon the terms as set forth and described in said option
and each of them did verbally advise this plaintiff of said
willingness, readiness and ability on their part and each of
them; whereupon this plaintiff had made arrangements to
close the sale of said property unto the said Ovid G. Lind-
say on or about the 13th day of December, 1917; that on or
about the 12th day of December A .D. 1917, the defendants
herein acting by and through their agent J. H. Tatum, did
request this plaintiff to call at the office of the defendant
corporation, in response to which request this plaintiff did
then and there call on the said defendant corporation, and
was then and there met by the said J. H. Tatum, who, act-
ing as the agent of and for the defendant herein, submit-
ted unto this plaintiff a proposed contract wherein and
whereby the right, title and interest of this plaintiff in and
to the aforesaid Exhibit "A" and the property therein
described would become, if executed, the property of the
defendant herein, which proposal and offer of purchase by
the defendant herein this plaintiff did then and there refuse
to accept and accede, whereupon the said defendant corpo-
ration by and through its agent, J. H. Tatum, and the said
J. H. Tatum, acting for and as agent of said corporation,
did then and there advise, threaten and warn this plaintiff
that unless he would then and there accede to and accept
the proposed offer of purchase by the defendant corporation
of this plaintiff's rights, title and interest in and to the
aforesaid Exhibit "A," and the real property therein de-
scribed and set forth, that the defendant herein would insti-
tute suit against this plaintiff, wherein and whereby the

right, title and interest of this plaintiff in and to the aforesaid Exhibit "A" and the property therein described would be "tied up" and clouded, and that the said defendant corporation would "tie-up" and cloud the aforesaid property, and all other real estate then owned by this plaintiff; that shortly thereafter, to-wit: the next day, December 13th, A. D. 1917, the defendant, well knowing the premises and maliciously and without probable cause, contriving to cause it to be suspected that such right, title and interest as was then held by the plaintiff herein to the contract, of which "A" is a true copy and the land therein described, was not held by this plaintiff in his own right but was, in fact, held by this plaintiff as trustee of and for the defendant herein, did institute a suit in equity on the 13th day of December, 1917, and did cause to be filed in said cause a bill of complaint, a lis pendens and an amended bill of complaint wherein and whereby the defendant herein did charge, allege, publish and declare that as to the capacity in which this plaintiff entered into the contract, of which Exhibit "A" is a true copy, to be that of trustee of and for the defendant herein; that by reason thereof the said prospective purchasers on becoming notified of the aforesaid suit in equity, to-wit: December 13th, 1918, were, and each of them dissuaded and prevented from acquiring and purchasing the aforesaid property for the price and at a valuation of $60,000.00, by reason of the aforesaid suit in equity and as a consequence and approximate result thereof, this plaintiff was unable to sell the said property for the sum and at the valuation of $60,000.00, as he would and could have done;

"That thereafter the said Ovid G. Lindsay and the said W. I. Phillips, each of them, as evidenced by their readiness, willingness and ability to purchase said property at a price of $60,000.00, did on or about March 30th, 1918, make a legal tender of the sum of $30,000.00 cash together

with a mortgage upon said property in the amount of $30,000.00, they and each of them, however, being unwilling to accept a deed to said property as long as the aforesaid suit in equity was pending and undetermined; that in the place and stead of this plaintiff being able to dispose of said property at the value of $60,000.00 as he would and could have done as aforesaid, this plaintiff was forced to sell said property for a far less sum, to-wit: $37,500.00 and did, on or about the first of April, 1918, enter into a certain contract with one of the aforesaid prospective purchasers, Ovid G. Lindsay, for the purchase and sale of said property and the right, title and interest of this plaintiff therein, all as appears by copy of said contract which is hereto attached, marked Exhibit 'E' and made a part hereof as if set forth herein in *haec verba*.

"That the plaintiff was thereupon forced to defend the above described suit in equity and forced to spend divers sums of money on account thereof, to-wit: $3,000.00; that by reason of the aforesaid equity suit, the title to said property became so clouded that the plaintiff was unable to sell said property at its then market value, to-wit: $60,000.00, but was forced to sell said property at the highest market price as was otherwise obtainable, the aforesaid equity suit being considered, which was, to-wit: $37,- 500 as appear by the aforesaid Exhibit 'E'; that on the 30th day of July, 1918, a final decree was entered in said chancery cause, finding the equities therein to be with the defendant in said cause, Percy L. Watson, which said Percy L. Watson is the plaintiff herein, which said decree is as appears more fully by a true copy thereof, hereto attached marked Exhibit 'F' and made a part thereof as if set forth herein in *haec verba,* which said decree was on the 10th day of M............... 1918, duly confirmed by a mandate of the Supreme Court of the State of Florida

under date of March 10, 1920, a true copy of which mandate is hereto attached and market Exhibit 'G' and made a part hereof.

"Therefore, by reason of the aforementioned litigation the plaintiff charges that he has been damaged in the sum of $50,000.00, and thereupon brings this his suit, and claims $50,000.00 damages."

EXHIBIT 'A'

STATE OF NEW JERSEY,
COUNTY OF MONMOUTH, ss.

"THIS AGREEMENT, This day made and entered into by and between Frank Osborn, joined by his wife, Viola L. Osborn, of Middletown, New Jersey, hereinafter referred to as the parties of the first part, and Percy L. Watson of Dade County, Florida, hereinafter referred to as the party of the second part:

"WITNESSETH: That if the said party of the second part shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said parties of the first part hereby covenant and agree to convey and assure to said party of the second part, his heirs and assigns in fee simple, clear of all encumbrances whatever, by a good and sufficient warranty deed of conveyance, the lots, pieces or parcels of land situate in the county of Dade and State of Florida, known and described as follows, to-wit:

"LOT (5) FIVE SECTION (35) THIRTY FIVE, TOWNSHIP (52) FIFTY TWO SOUTH, RANGE (42) FORTY TWO EAST, containing SEVENTY EIGHT acres and 54/100 hundredths of an acre, more or less.

"And the party of the second part hereby covenants and agrees to pay to the said Frank Osborn the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000) in manner following:

"FIVE THOUSAND DOLLARS, cash, the receipt whereof is hereby acknowledged; $2500.00 on or before the 28th day of April, 1918; $2500.00 on or before the 28th day of October, 1918; $2500.00 on or before the 28th day of April, 1919; $2500.00 on or before the 28th day of October, 1919; $2500.00 on or before the 28th day of April, 1920; $2500.00 on or before the 28th day of October, 1920; $2500.00 on or before the 28th day of April, 1921; $2500.00 on or before the 28th day of October, 1921; together with interest from date on all unpaid principal at the rate of six per cent per annum, payable semi-annually until the sum of Twenty thousand dollars with accrued interest shall have been fully paid, together with interest on all past due interest payments at the rate of six per cent. per annum from date due until paid.

"And the party of the second part hereby obligates and binds himself to pay all taxes, assessments or impositions that may be legally levied or imposed upon said land subsequent to the year 1917.

"And the parties of the first part hereby obligates and binds themselves, should the party of the second part so desire, to execute and deliver a warranty deed for such lands as soon as one-half of the purchase price shall have been paid, and in such event all sums remaining unpaid as principal and interest shall be secured by a first mortgage upon above described property payable three (3) years after date, and shall bear interest from date at the rate of six per cent. per annum, payable semi-annually.

"And it is further distinctly understood and agreed that the legal effect of this instrument shall be that of an option renewable from period to period by the payments above designated until the entire purchase price shall have been paid, and that failure to pay any of such installments within thirty days from the date on which same become due

and payable shall immediately cancel and annul this instrument, and all rights of the party of the second part hereunder; and in such event the party of the second part shall forfeit all improvements that he may have placed thereon including all monies that may have been paid as part of the purchase price of said property as liquidated damages.

It is furthermore distinctly understood and agreed that the parties of the first part reserve and the party of the second part agrees to dedicate a strip of land sixty (60) feet wide running across the property hereby conveyed North and South, to be used as a public road and to be located by the parties of the second part so as to connect with a road when located upon the properties North and South of the property hereby conveyed; it being understood and agreed between the parties hereto that this exception is in pursuance of that certain exception contained in a deed from Elnathan T. Field to Frank Osborn, dated April 1, 1906, and recorded in Deed Book 31, page 419, public records of Dade County, Florida, and that this exception shall be binding upon the parties hereto, their heirs, executors, administrators, assigns and successors, by the making and accepting of this contract.

"The parties of the first part hereby further covenant and agree that they will at any time prior to the payment in full of the purchase price herein designated, upon the request of the party of the second part, execute warranty deeds for any portion of said property upon the said party of the second part paying to the parties of the first part therefor Twenty dollars ($20) per front foot measured North and South, in addition to the payments herein designated; provided that the said parties of the second part be not in default in any payment of principal under this contract; the amounts received by the said parties of the

first part for any deeds so executed, to be applied upon the last payments due for the purchase price of the property herein contracted to be conveyed.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this eighth day of September, A. D. 1917.

Frank Osborn (Wafer Seal)
Viola L. Osborn (Wafer Seal)
P. L. Watson (Wafer Seal)

Signed, sealed and delivered in the presence of:

Lucy U. Coley.

Edw. W. Wise,

Witness as to Frank Osborn and Viola L. Osborn and P. L. Watson.''

A demurrer to the declaration was overruled.

The defendant pleaded:

"1.  That it is not guilty.

"2.  That the chancery suit in said declaration described was instituted by this defendant against the plaintiff in good faith and with probable cause.

"3.  That the alleged cause of action in said declaration set forth did not accrue within two years before this suit.''

A demurrer to the last plea was sustained.

Trial was had on the following pleas:

"1.  That it is not guilty.

"2.  That the chancery suit in said declaration described was instituted by this defendant against the plaintiff in good faith.

"5.  That the chancery suit in said declaration described was instituted by this defendant against plaintiff upon advice of reputable counsel after a full and fair disclosure of the facts in said cause.''  Verdict and judgment for $37,110.00 were rendered for the plaintiff February 27, 1924, and the defendant took writ of error.

It seems clear that this is an action for malicious prosecution concerning an interest in lands, and that the four-year statute of limitations is applicable. The second amended declaration does not state a cause of action that in its nature is essentially different from that stated in the first two declarations filed. While some of the allegatons may show a slander of title, there are allegations showing the prosecution of a civil suit with malice and without probable cause, that seriously injured this plaintiff's property rights and that such suit terminated in favor of this plaintiff. 18 R. C. L. 13; 37 C. J. 130.

Malicious prosecution, a very ancient action, regarded as a remedy, is a distinctive action ex delicto for the recovery of damages to person, property, or reputation, shown to have proximately resulted from a previous civil or criminal proceeding, which was commenced or continued without probable cause, but with malice, and which has terminated unsuccessfully. Regarded as a specific tort, it is the wrong so committed, and it is considered a personal tort. The term is also sometimes used as the name of the original judicial proceeding.

The gist of the action is that plaintiff has been improperly made the subject of legal process resulting in his damage. 38 C. J. p. 383.

An action for maliciously putting the law in motion lies in all cases where there is a concurrence of the following elements: (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its bona fide termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action. 38 C. J. p. 386.

An action for malicious prosecution is an action in tort to recover damages for the institution, maliciously and without probable cause, of a suit which has terminated in favor of the defendant therein.

An action for damages for the malicious prosecution of civil suits disputing the title to lands is not an action for damages for injury to the person, nor for detention, conversion or injury to personal property.  Shedd v. Patterson, 312 Ill. 371, 372, 144 N. E. Rep. 5.

The question to be determined is whether the action for malicious prosecution was an action to recover damages for injury to real property.  While the word "property," in common use, is applied to the tangible physical thing commonly called property, in the law it is not the material object, but the right and interest which one has in it, to the exclusion of others, which constitutes property.  Property, in a legal sense, consists in the domination which is rightfully and lawfully obtained over a material thing, with the right to its use, enjoyment and disposition.  Shedd v. Patterson, *supra*, text 374.

The term "property" has a most extensive signification, and in its strict legal sense means that dominion or indefinite right of user and disposition which one may lawfully exercise over particular things or objects.  But the word is often used to indicate the subject of the property or the things owned, as a chattel or a tract of land.  These things, however, though the subjects of property, are, when coupled with possession, but the visible manifestations, of invisible rights, the evidence of things not seen.  22 R. C. L. p. 37; 32 Cyc. 647.

In an action for malicious prosecution the burden of proving all the essential elements of the cause of action, including the concurrence of malice and want of probable cause, is on the plaintiff; and to sustain a recovery all such

essential elements must be established by a preponderance of the evidence. ·38 C. J. 479, 497.

The giving of the following charge was duly excepted to and assigned and argued as error:

"Malice may be expressly proved, or it may be inferred from a total want of probable cause for the bringing of the action; therefore, if you believe from the preponderance of the evidence that there was a total want of probable cause for defendant, Tatum Brothers Real Estate & Investment Company, to have prosecuted the action, as alleged in plaintiff's declaration, in such event, your verdict should be for the plaintiff in such sum as you may find from the preponderance of the evidence plaintiff has been damaged, as alleged in plaintiff's declaration."

"To make out a cause of action in malicious prosecution, malice and want of probable cause must concur. Without malice, want of probable cause is wholly insufficient. And, on the other hand, it is not sufficient to show merely that the action was maliciously prosecuted; it must also appear that the action was commenced or continued without probable cause. Malice alone, however great, is insufficient. Want of probable cause cannot be inferred from malice, however great such malice may be, even 'the most express malice.' But malice may be implied or inferred as a fact from want of probable cause." 38 C. J. pp. 400, 401, 402, 403.

"The jury may infer malice from want of probable cause, and it has been said that ordinarily it does so. Nevertheless, the inference is not one of law but merely a presumption of fact which may be rebutted and is one which the jury is not required to draw, and which it should not draw if other facts disclosed by the evidence lead to a different conclusion." 38 C. J. pp. 425, 426, 427.

The quoted charge that "if you believe from the pre-

ponderance of the evidence that there was a total want of probable cause, * * * in such event, your verdict should be for the plaintiff,'' required a finding for the plaintiff whether the jury did or did not infer from a total want of probable cause if so found by them, that the equity suit was maliciously brought by the defendant.

In view of the inconclusive nature of the evidence as to malice and as to want of probable cause, the quoted charge was harmful error in that it reasonably may have confused the jury as to their province to determine whether an inference of malice should or should not be drawn from an absence of probable cause, if such absence of probable cause be found by them.

This being so, the judgment should be and is reversed for a new trial.

TERRELL AND BUFORD, J. J., concur.

ELLIS AND STRUM, J. J., AND CAMPBELL, CIRCUIT JUDGE, concur in the opinion.

BROWN, C. J., not participating.