132 So.2d 449 (1961)
Clifford A. GORDON, Appellant,
v.
CITY OF BELLE GLADE, Appellee.
No. 2286.
District Court of Appeal of Florida. Second District.
August 23, 1961.
*450 Garlon A. Davis, Ives & Davis, West Palm Beach, for appellant.
L. Martin Flanagan, Jones, Adams, Paine & Foster and Claude S. Jones, West Palm Beach, for appellees.
ALLEN, Justice.
This is an appeal by the plaintiff below from a summary judgment in favor of the defendant-appellee in an action for assault and battery, false arrest, false imprisonment and malicious prosecution.
The plaintiff alleged he was carelessly and negligently beaten on November 24, 1957, by two police officers of the City of Belle Glade while placing plaintiff under arrest without a warrant for an alleged act that was not committed in the presence of the police officers. The plaintiff was convicted in municipal court on December 13, 1957, of committing an assault on the two police officers and sentenced to pay a fine of $250 or, in the alternative, to serve 60 days in the city jail. The plaintiff appealed to the circuit court which reversed the conviction on November 21, 1958, on the ground that the plaintiff was arrested without lawful authority and that he was entitled to use such force as was necessary in resisting the arrest.
The instant action was filed against the city on May 29, 1959, and a notice of claim was sent to the city on February 25, 1959. The defendant moved to dismiss the complaint and also to strike on the ground that the claim was barred by the statute of limitations. These motions were denied and the defendant answered denying the allegations of the complaint and asserted the affirmative defenses that the action was barred by § 95.24, Florida Statutes, F.S.A., and that there was probable cause to arrest the plaintiff. The defendant then moved for summary judgment. The court originally granted defendant's motion for summary judgment as to all counts of the complaint except count 6, which alleged malicious prosecution. Subsequently, summary judgment was also granted in favor of the defendant on the authority of Middleton v. City of Fort Walton Beach, Fla.App. 1959, 113 So.2d 431. Final judgment was then entered for the defendant on all counts of the complaint.
*451 Section 95.24, Florida Statutes, F.S.A., provides:
"(1) No action shall be brought against any city or village for any negligent or wrongful injury or damage to person or property unless brought within twelve months from the time of the injury or damages."
The arrest and alleged assault and battery by the two city police officers took place on the 24th of November, 1957. This action against the city was filed May 29, 1959, so, unless other facts have intervened, the plaintiff's action against the city would have had to be instituted within twelve months from the time of the injury or damages.
In the case of Cristiani v. City of Sarasota, Fla. 1953, 65 So.2d 878, 879, the Supreme Court held that where a minor was injured as a result of negligence of city employees in the operation of a truck and an action was not instituted within the statutory period of § 95.24, F.S.A., that it was barred even though the injury to the eye of said minor was not discovered until eighteen months after the accident. The Court, in its opinion, said:
"Casual reading of the statute discloses that any action for damages against the city for injury or damage to person or property must be brought within 12 months. In this case it is pointed out that plaintiff was a minor six years of age at the time of his injury but that its full import, his blindness, did not materialize, or was not known, for 18 months or more, at which time the action was brought. It is contended that under such circumstances, the latter date should be construed as the date the action accrued as well as the date the statute of limitations begins to run.
* * * * * *
"* * * We think the phrase `injury or damage to person or property' means `injury to person' and `damage to property'. Either one or both might occur simultaneously but in either event the statute begins to run at the time of the accident or misfortune which caused the injury or damage. Any other interpretation placed on the statute would lay it open to endless confusion and uncertainty as to when claims covered by it are barred."
In a workmen's compensation case, Canada Dry Bottling Co. of Florida v. White, 153 Fla. 70, 13 So.2d 595, the Florida Supreme Court held that a right to compensation was barred since a claim was not filed within one year after the injury although another provision of the statute provided that claims could be filed at any time after the first seven days of disability.
We held in the case of United States Casualty Co. for Use and Benefit of Cheston v. Town of Palm Beach, Fla.App. 1960, 119 So.2d 800, 801, that the insurance carrier was precluded from bringing a suit against the Town of Palm Beach where its insured was injured on February 19, 1957, and no action was taken against the city within one year from the date of injury even though the compensation act authorized an insurance carrier to institute suit against a third party tort feasor (§ 440.39(4), Fla. Stat., F.S.A.) if the injured employee or his dependents failed to bring suit against the third party tort feasor within one year after the cause of action accrued. In this case we stated:
"It is clear that there is an apparent conflict between the two statutes. The plaintiff had no cause of action against the defendant until the claimant had received compensation benefits and had failed to commence an action against the defendant within twelve months from the time the cause of action accrued. * * *
"We accordingly hold that claimant's cause of action accrued at the time of the accident or misfortune which *452 caused his injury. Any other interpretation of section 95.24, Florida Statutes, F.S.A., would render confusing and uncertain the time at which claims covered by it are barred."
See also Annotation 41 A.L.R.2d 1044.
It was held in Old Plantation Corp. v. Maule Industries, Inc., Fla. 1953, 68 So.2d 180, that a cause of action for slander to realty by wrongful and malicious disparagement of title was not a continuing one from day to day until defendant's claim to such property was dissolved, but accrued and began to run when the wrongful act of filing notice of lien on said property was committed.
In the case of De Bouchel v. Koss Const. Co., 177 La. 841, 149 So. 496, 497, it was held that a cause of action for false imprisonment arose on the day on which plaintiff was imprisoned and released and an action not brought within one year thereafter was prescribed. The defendant was also sued on an act for malicious prosecution and the Court, in its opinion, stated:
"As respects the demand for damages for false imprisonment, the damage and the cause of action therefor arose on the same day, namely, June 5, 1931, which is the day on which plaintiff was both falsely imprisoned and then released from prison. This suit was not filed until July 5, 1932, exactly thirteen months after the damage was sustained. Therefore, under articles 3536 and 3537 of the Civil Code, providing that damages resulting from offenses and quasi offenses prescribe in one year after the damage is sustained, this demand is prescribed. With respect of the second demand  the one for damages for malicious prosecution  the right to maintain a suit upon it arose on the termination of the prosecution favorably to plaintiff. * * *"
In an old Mississippi case, Johnson v. White, 13 Smedes & M. 584, 21 Miss. 584, it was held that the statute of limitations in trover began to run from the time of conversion and that it was immaterial whether plaintiff knew of the conversion or not, if not prevented from knowing thereof by fraud.
The appellant states the following point:
"A cause of action for assault and battery, false imprisonment, false arrest and malicious prosecution growing out of the same occurrence does not accrue until a final determination of the falsity of the arrest, imprisonment, malicious prosecution and assault and battery."
The appellant has cited no case directly bearing on the time that the cause of action accrued in the instant case though he argues that no cause of action accrued until the final determination of the criminal proceedings, approximately four months prior to the filing of this action.
The appellee, in its brief, asserts that the plaintiff's point attempts to interrelate the charges of assault, battery, false imprisonment and false arrest with the charge of malicious prosecution and that such an interrelation confuses the proper issues to be decided in this matter; that malicious prosecution should be considered separately from the other allegations as the element of want of probable cause is a constituent element in only the count of malicious prosecution and not in the other counts of the complaint, citing 14 Fla.Juris., False Imprisonment, § 2, p. 286-287, which provides:
"Although false imprisonment and malicious prosecution are often confused, there is a fundamental distinction between them. In the former the detention is obtained without color of legal authority, while in the latter it is procured under due form of law. Moreover, while in an action for malicious prosecution the plaintiff must show malice, termination of proceedings in his favor, and want of probable cause, this showing need not be made *453 in an action for false imprisonment. (Fisher v. Payne, 93 Fla. 1085, 113 S. 378 (1927); S.H. Kress & Co., v. Powell, 132 Fla. 471, 180 S. 757 (1938); Johnson v. Weiner, 155 Fla. 169, 19 So.2d 699 (1944); 22 Am.Jur., False Imprisonment, Sections 25-29.)"
The appellee further argues in its brief that there is no interrelation between the count for malicious prosecution and the other counts requiring delay of action in the latter until the termination of the criminal proceeding against tthe plaintiff in his favor. Reasoning supporting this contention is that evidence of the determination of a criminal proceeding and its outcome is not admissible in a subsequent civil case.
The Florida Supreme Court, in State v. Dubose, 1943, 152 Fla. 304, 11 So.2d 477, 481, quoted from Wharton on Criminal Evidence, Vol. 2, 11th Ed., para. 847, pp. 1459-1461, as follows:
"847. Admissibility of criminal judgments in civil cases.  It is the well established rule that a judgment rendered in a criminal action, when offered in a civil action to establish the facts upon which it was rendered, is not admissible as evidence of such facts. The decisions are in harmony with the general rule as illustrated by the case law in all of the jurisdictions. * * *"
The above ruling is exemplified also in Wirt v. Fraser, 1947, 158 Fla. 777, 30 So.2d 174; Carter v. Carter, Fla. 1956, 88 So.2d 153; and Eggers v. Phillips Hardware Co., Fla. 1956, 88 So.2d 507.
We hold that the lower court was correct in applying the one year statute of limitations hereinabove set forth against the plaintiff-appellant.
Point Two of the appellant is as follows:
"A municipal corporation in the State of Florida is responsible as respondeat superior for the unlawful, negligent and malicious acts of its police officers performed under their authority as such and within the scope of their employment for an unlawful assault and battery, false arrest, imprisonment and malicious prosecution."
The Supreme Court of Florida, through an opinion of Mr. Justice Thornal in the case of Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193, overturned the theory of municipal immunity in certain fields of tort liability. The appellant cites this case and ably argues its impact on the liability of the defendant below. The appellant, in his brief, alleges that the Supreme Court of Florida in Hargrove v. Town of Cocoa Beach, supra, accepted the dissenting opinions of Mr. Justice Terrell, Mr. Justice Hobson and Mr. Justice Roberts in the cases of City of Miami v. Bethel, Fla., 65 So.2d 34, and Williams v. City of Green Cove Springs, Fla., 65 So.2d 56. If the appellant is correct in his conclusion that the dissenting opinions of the above mentioned justices in the case of City of Miami v. Bethel, supra, are correct, then these dissents could be deemed controlling for the acts of the police in the instant case are very similar to the acts of the police in the Bethel case. In that case it appears from the facts set forth in the opinion of the Court that shortly prior to the beating of the plaintiff by two police officers of the City of Miami, the plaintiff Bethel had been shooting craps with a group of friends in the back yard of a certain property on which was located a building containing a poolroom. After losing all his money, Bethel quit the crap game and walked into the poolroom. Shortly thereafter two policemen of the City of Miami appeared on the scene and the crap shooters scattered. One of the police officers saw the plaintiff Bethel and accused him of having been participating in the crap game. Bethel denied this and one officer seized him, took him outside the building, and held him while the other officer gave him a severe beating.
It is observed that the facts in the Bethel case are very similar to the facts in the instant *454 case. However, the opinion of the Supreme Court in Hargrove v. Town of Cocoa Beach, supra, makes this statement:
"Much that we have here written has been heretofore adequately and thoroughly presented by the able dissenting opinions of Mr. Chief Justice Terrell and Mr. Justice Hobson in City of Miami v. Bethel, Fla. 1953, 65 So.2d 34, and the dissents of the same Justices in Williams v. City of Green Cove Springs, Fla. 1953, 65 So.2d 56. Mr. Justice Roberts concurred in these dissents. Reference might properly be had to those opinions for a more thorough and lucid explanation of our justification for departure from the rule of municipal immunity." [96 So.2d 134.]
The Court did not overrule the above mentioned cases in its opinion. The Court further said in its opinion:
"We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691."
In Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691, the Supreme Court held that the granting or withholding of a building permit by a municipality was an exercise of a purely governmental function and a city could not be held liable in a tort action for refusal to issue a building permit.
Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049, was an action brought against the city to recover damages for injuries received as a result of an enforcement of an allegedly unconstitutional ordinance passed by the city which ordinance was one regulating peddlers and others.
The lower court, in the instant case, based his decision on the case of Middleton v. City of Fort Walton Beach, Fla.App. 1959, 113 So.2d 431, where the First District Court of Appeal, in an opinion by Judge Sturgis, affirmed the trial judge in dismissing a suit against a municipality to recover for intentional torts of its agents. The court, in effect, held that the doctrine of respondeat superior would not be extended to a municipal corporation to render it liable to plaintiff who claimed that he had been arrested by a police officer pursuant to a warrant known by the officer to be void and alleging that the clerk of the municipal court had acted falsely and maliciously in executing jurat to the affidavit and issuing a warrant for the plaintiff's arrest. The court, in its opinion, said:
"The Hargrove case simply held the municipality liable for a negligent tort committed by a police officer within the scope of employment, and the opinion carefully protected that concept `against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54, [37 A.L.R.2d 691].' * * *"
We will not pass upon the accuracy vel non of the lower court's determination that count 6, which is the malicious prosecution count of the complaint, did not *455 state a cause of action against the defendant below upon the authority of the Middleton case, as we must affirm the lower court on another fundamental principle of pleading in the case of an action for malicious prosecution since one of the essential elements for such action is that there was no probable cause for the institution of the proceedings against the plaintiff upon which the malicious prosecution case was based. The complaint of the appellant, plaintiff below, shows that he was found guilty in the city court.
In a case decided by this court, Calbeck v. Town of South Pasadena, Florida, Fla. App. 1961, 128 So.2d 138, 141, where the plaintiff had filed an action for malicious prosecution against the city and other defendants for having arrested her for disorderly conduct for the loud blowing of a vehicle horn on the vehicle she was driving, we held that the fact of the plaintiff's conviction in the municipal court of the Town of South Pasadena, Florida, justified the granting of summary judgment in favor of the city and other defendants as showing probable cause. In our opinion we said:
"In Goldstein v. Sabella, Fla. 1956, 88 So.2d 910, 911, 58 A.L.R.2d 1418, the Supreme Court held that in the absence of a showing that judgment for the landlord in an eviction case had been obtained by fraud, perjury, or other corrupt means, the judgment was conclusive on the question of whether the landlord had had probable cause for instituting the proceeding for eviction even though the eviction proceeding judgment had been reversed on appeal. The Court, in its opinion, stated that Goldstein, in her complaint, alleged the filing of the eviction suit by Sabella; that judgment was rendered for Sabella therein; that said judgment was subsequently reversed on appeal; and that said eviction suit was brought maliciously and without probable cause. The Court then noted that there was no allegations in the complaint that the judgment for Sabella and against Goldstein in said eviction suit was obtained by fraud, perjury, or other corrupt means."
We again quoted from Goldstein v. Sabella, supra, as follows:
"In our opinion a trial in a court of competent jurisdiction, which results in a judgment of conviction, or verdict for plaintiff, is a sufficient legal determination of the existence of probable cause and there would appear to be no valid reason to have that question determined again in another action. Nor does the fact that the judgment be subsequently reversed affect such determination. The reasoning and conclusion of this Court in Lewton v. Hower, supra [35 Fla. 58, 16 So. 616], supports this view, as does Laughlin v. St. Louis Union Trust Co., 330 Mo. 523, 50 S.W.2d 92. The case of Brooks v. Super Service, Inc., supra [183 Miss. 833, 183 So. 484, 185 So. 202], supports our holding that a subsequent reversal of a judgment of conviction does not destroy the effect of a judgment of conviction."
It was also stated in Goldstein v. Sabella, supra, as follows:
"* * * We have held in Tatum Bros. Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623, that the lack of probable cause is one of the six elements which must be alleged and proved in a suit for malicious prosecution. When conclusive evidence of probable cause appears in the complaint, as here, the complaint is insufficient in law and on motion timely made is properly dismissed." [88 So.2d 912.]
We therefore hold that summary judgment should have been granted by the lower court in favor of defendant city as the 6th count of the complaint alleging malicious prosecution showed on its face that it did not state a cause of action in *456 that it affirmatively alleged that the defendant was convicted in the city court although such conviction was subsequently reversed by the circuit court.
Affirmed.
SHANNON, C.J., and FUSSELL, CARROLL W., Associate Judge, concur.