267 So.2d 633 (1972)
DADE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
GENERAL WATERWORKS CORPORATION, a Pennsylvania Corporation, et al., Appellees.
No. 41511.
Supreme Court of Florida.
July 20, 1972.
Rehearing Denied November 6, 1972.
*634 Stuart L. Simon and John R. Farrell, Special Counsel, Miami, for appellant.
Darrey A. Davis, of McCarthy, Steel, Hector & Davis, Miami, for appellees.
Robert M. Ervin, and F. Perry Odom, of Ervin, Pennington, Varn & Jacobs, Tallahassee, for Florida Waterworks Assn., Inc., as amicus curiae.
John U. Lloyd, Fort Lauderdale, for Broward County, as amicus curiae.
William C. McLean, Jr., Tampa, for Hillsborough County, as amicus curiae.
McCAIN, Justice.
This direct appeal comes to us from a final judgment of the Circuit Court of Dade County dismissing the plaintiff-County's fourth amended complaint in condemnation. We have jurisdiction over the appeal as one construing a controlling provision of the Florida Constitution. Fla. Const., Article V, section 4(2), F.S.A.
On January 7, 1969, the Dade County Board of County Commissioners announced a policy of County acquisition and operation of all thirty-one privately owned water and sewer systems operating within Dade County. Such acquisition was declared to be the only feasible means of controlling existing pollution and of providing adequate water and sewer service to meet present and anticipated future needs within the County.
On March 12, 1969, as a means of implementing its policy with regard to the utilities, the Board adopted Resolution No. R-314-69, authorizing the acquisition of the capital stock of six listed companies, including appellee General Waterworks, either by negotiation or through eminent domain.[1] Thereupon the County on July 17, 1969, filed a petition in the Circuit Court pursuant to Fla. Stat. § 73.021, F.S.A., seeking to condemn all the corporate stock of the named corporations.
After some preliminary procedural maneuvers, defendant-appellees moved to dismiss the petition, challenging the County's authority to acquire shares of corporate *635 stock by eminent domain, and asserting that the actual share certificates had a situs in Pennsylvania, outside the jurisdiction of the Court. The merits of this motion were never resolved. During its pendency, the trial court allowed the County to amend its condemnation petition to permit acquisition of the physical assets of appellees directly. Resolution No. R-209-70, adopted by the Board on February 18, 1970, accompanied the second amended petition. This resolution incorporated relevant portions of the initial resolution, but provided for direct appropriation of the real and personal property of appellees. As a result, the challenge to acquisition of the capital stock was never decided.
Thereafter, the trial court determined to hold a pre-trial in limine hearing under Fla. Stat. § 73.061(1), F.S.A.[2] to resolve certain issues of law raised by appellees' affirmative defenses. Two of these are of consequence on this appeal: (1) the contention that the County, in initiating eminent domain proceedings, acted in bad faith and without the requisite necessity; and (2) the assertion that the County did not intend to compensate appellees for so-called "contributed property" admittedly owned by them.[3] We will consider these issues in order.
Appellees' argument as to point one emanates from the following statement appearing in both resolutions adopted by the Board of County Commissioners:
"Section 3. The County Manager and County Attorney are authorized and directed to acquire such property by negotiation and purchase or through eminent domain proceedings, subject to approval and determination of the fiscal feasibility by the Board of the purchase price established either through negotiation or through eminent domain proceedings." (Emphasis supplied)
It was contended at the trial level and again here that to condition the efficacy of the eminent domain judgment on a finding of "fiscal feasibility" by the County discredited the County's affirmation of necessity and good faith. It appears that the trial judge read into Dade County's intent to reserve judgment on fiscal feasibility an intent to abandon the proceedings unless the method of valuation advocated by the County (i.e., capitalization of the regulated earnings of the utilities) was adopted at trial. In his final judgment the trial judge dismissed the County's fourth amended petition, stating, inter alia,
"There is a marked difference between a condemning authority undertaking to prescribe in advance the sole measure of compensation or method by which it shall be determined, and ultimately declining to complete the acquisition of property, for economic or other considerations, by exercising the procedural prerogative afforded by the provisions of Section 73.111, Florida Statutes."
We disagree with the trial judge that the record establishes that the County was committed to a single method of valuation, *636 but this question will be dealt with infra. At this point we confine our discussion to the County's showing of necessity and good faith.
The 1968 Florida Constitution, Article X, Section 6(a) provides that no private property shall be taken "except for a public purpose and with full compensation therefor ..." Appellees do not contend that the taking of private utility companies with the intention of creating a unified public utility system does not constitute a public purpose. But we note in this regard that the Legislature, by general law, has authorized counties to condemn private water supply systems for the purpose of creating county water systems. Fla. Stat. § 153.03, F.S.A. This statute amounts to a Legislative declaration that creating of a county water system is a public purpose, and as such it would necessarily be accorded great weight by this Court were the issue raised. Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488 (1929). In any event, the purpose must be considered a public one in the context of this appeal, since the issue is not properly before us.
Fla. Stat. § 73.021, F.S.A., sets forth the requirements for a petition in condemnation. Among these are the following:
"73.021 Petition; contents.  Those having the right to exercise the power of eminent domain may file a petition therefor in the circuit court of the county wherein the property lies, which petition shall set forth:
"(1) The authority under which and the use for which the property is to be acquired, and that the property is necessary for that use;
......
"(5) A statement that the petitioner has surveyed and located its line or area of construction, and intends in good faith to construct the project on or over the described property; ..." (Emphasis supplied)
Thus, the statute requires that the property sought to be condemned be necessary for the declared public purpose of the condemning authority, and that there be a good faith intent on the part of the condemning authority to use the property, once acquired, for such purpose.
In our judgment the County's petition meets the statutory requirements of necessity and good faith. Given Dade County's declared public purpose of creating a public utility system for the entire County, it would be difficult, if not impossible, for General Waterworks to argue that its facilities were not "necessary for that use". Indeed, appellees make no such contention. Nor does the petition disclose any intent to use the acquired property for other than public utility purposes. As a practical matter, it seems unlikely that the specialized plant and equipment of a private waterworks company could be economically converted to a different public use, and we find no indication that the County intends to do so if it acquires the property through condemnation. Thus, we are satisfied that the County is operating within the framework of the express statutory provisions applicable pursuant to Fla. Stat. § 73.021, F.S.A.
But it is also argued that the County must show a broader necessity; in essence, a necessity that condemnation be resorted to at all. Appellees assert that such a showing cannot be made if the condemnor reserves the right to abandon the proceedings in the event the judgment is outside its financial wherewithal. We are not aware of any such requirement in either the statutes or the case law. The necessity argued for by the utilities appears to be an absolute necessity, such that the condemnor may not even seek condemnation if a possibility of later abandonment exists. But the Constitution only requires that the property be acquired for a public purpose, not for an absolute public necessity. In our view, a purpose may be public without being of such compelling necessity that condemnation is required whatever the price.
*637 Statutory authority supports this position. Fla. Stat. § 73.111, F.S.A. expressly permits abandonment following entry of a judgment in condemnation, by allowing the condemnor to refrain from paying the amount of the judgment into the registry of the Court. As we said in Florida Central and Pacific R. Co. v. Bear, 43 Fla. 319, 31 So. 287 (1901), an early case interpreting a similar statutory provision:
"... There is nothing in our statute which deprives the petitioner of the right to abandon the proceedings at any time before it pays or secures the compensation of the landowner, and the statute expressly makes the failure to pay into court an abandonment of the proceedings, and declares them null and void."
See also State ex rel. Curtis v. Himes, 119 Fla. 428, 161 So. 560 (1935). In light of the fact that all element domain proceedings are subject to the express conditions of Fla. Stat. § 73.111, F.S.A., we conclude that it was not improper for Dade County to recognize the possibility of later abandonment in its authorizing resolution. Such a result is especially appropriate where, as here, the proper method of valuation of the properties is vigorously contested, and the amount of the final judgment will probably fluctuate considerably depending on the valuation method ultimately adopted at trial.
We turn next to the question of the proper method of valuation of appellees' property acquired through so-called customer contributions. This issue was considered by the trial judge at the in limine hearing below, and an extensive portion of the final judgment devoted to a discussion of it. In part, the judge found:
"The fundamental question which the parties present to the Court for determination is whether or not the County has the right to acquire privately owned and operated water and sewer systems in eminent domain proceedings without liability for payment of compensation to recompense the owners for any property that they acquired as contributions in aid of the construction of their utility systems.
"Petitioner points out that privately owned and operated water and sewer companies are regulated. The police power, as exercised by Dade County through the Metropolitan Dade County Water and Sewer Regulatory Ordinance (Chapter 32, Code of Metropolitan Dade County) provides for fixing and determining the rates and charges of water and sewer systems operating within Dade County, and requires that contributed property shall be excluded from the rate base and prohibits any return on any property acquired by the utility from its customers as contributions in aid of construction; no earnings, depreciation, or going concern value is permitted on contributed property. The validity of such regulations for rate-making purposes has been sustained ... [Citations omitted].
"It is undisputed that the County is claiming it has the lawful power to acquire by condemnation privately owned water and sewer systems upon payment of compensation limited to valuations arrived at by capitalization of the regulated earnings or income realized by the utility companies upon the rate base prescribed by the County regulations governing water and sewer rates, which exclude any value or earnings upon contributed property ...
......
"The Courts are unanimous in rejecting capitalization of earnings as a means of arriving at the value for condemnation of utilities. Orgel, Vol. 2, pp 71 and 78. Capitalized earnings cannot be considered as the controlling factor in arriving at value in eminent domain proceedings for taking utility property. City of Phoenix v. Consolidated Water Company, 101 Ariz. 43, 415 P.2d 755 [866], 869. All the texts and authorities support the principle that capitalization of earnings, while *638 a factor relevant to a determination of the additional value of that portion of the award compensating for the taking of the franchise or going concern value, is incompetent as a matter of law as a measure of the total value of the entire property taken. Thus, the income or economic approach (capitalization theory) urged by the County does not provide a lawful foundation for determining the full compensation to be paid for the taking of the water and sewer systems owned by defendants ..."
Based on these findings of fact and law the trial judge: (1) determined that Dade County possessed the authority to acquire defendants' property by eminent domain, but only by "providing for payment of full compensation as determined and measured by a method of valuation under a legal rule of compensation that will fully recompense the owners for the value of all the properties sought to be appropriated."; (2) excluded capitalization of regulated earnings as the sole method of valuation as a matter of law; (3) found Resolution No. R-314-69, as amended by Resolution No. R-209-70, unconstitutional insofar as it purported to authorize Dade County to acquire the utilities on the basis of the capitalization of earnings method; (4) dismissed the amended petition.
While we agree, at least in part, with the trial judge's able exposition of the law of valuation in eminent domain proceedings, we do not think the record supports his statement that "It is undisputed that the County is claiming it has the lawful power to acquire by condemnation privately owned water and sewer systems upon payment of compensation limited to valuations ... which exclude any value or earnings upon contributed property . ."
Neither the County's condemnation petition nor the accompanying resolution attempt to invoke capitalization of regulated earnings as the sole method of valuation. Appellees admit the neutrality of the County's pleadings in this respect, but place reliance on certain statements of the County Attorney in a memorandum to the Board of County Commissioners, dated March 12, 1969, recommending acquisition of the private utilities operating within the County. The memorandum addresses the following remarks to the attention of the Board:
"Scope of Initial Acquisition. There are 31 privately owned water and sewer operations within the County varying in size from 24 to 24,000 customers, 17 of which furnish sewer service. Unlike most utilities, approximately half the actual investment reflected in the property of these utilities was invested by the stockholders and the remainder was `donated' or `contributed' either by the customer or, more typically, by a developer who passed the costs on to the homeowner who then became a customer. The utility was in a position of demanding and receiving this `contribution', because the developer and the customer could not do without the service and in most instances could not obtain the service except from one company and therefore was forced to `contribute' whatever was demanded by the utility, which was completely unregulated until 1960. County regulation since that date has, quite logically we believe, limited the return to the stockholders to a fair return upon their actual investment. The circumstances just outlined provide an entirely unique situation, so far as we have been able to ascertain, and therefore there is no established and accepted valuation of such properties for acquisition purposes.
......
"We are assuming, of course, that our Courts and juries will not make the public pay twice for these facilities, half of which were built with funds `contributed' at the point of an economic pistol by the customers. If we are wrong, we will have wasted considerable time, effort and money. However, the only way we can find out is to give our Courts and juries the opportunity to decide the issue for us."
*639 In our view the thrust of these remarks is ambiguous at best and we do not think the interpretation urged by the utilities is warranted under the circumstances. Moreover, the memorandum in question is advisory only, not binding on the Board of County Commissioners. It is true that, pursuant to the recommendations in the memo, the Board adopted Resolution R-314-69, authorizing condemnation of the six named utilities. But the latter document which does bind the Board, makes no demand for utilization of capitalization of earnings as the sole method of valuation; indeed, the resolution does not even suggest a particular method of valuation as being the most appropriate.
We might be inclined to overlook the inconclusiveness of March 12, 1969, memorandum if the County conceded its valuation approach in the trial record. But it has not done so. The following statement of the County in a memorandum of law submitted to the trial judge in response to appellees' motion to dismiss exemplifies its position:
"The Defendants' Point I [arguing that the County intended to make no compensation for contributed property] apparently seeks to elicit a ruling upon hypothetical, presumed evidence from this Court which is blatantly premature.
"Not only is fundamental prematurity obvious, but as well, such a ruling, of necessity, would have to be premised upon the unprecedented procedure of a proffer by the defendants of the presumed testimony of the petitioner's witness at a prospective trial, the date of which as yet is not determined."
Accordingly, we conclude that the record does not support the trial court's finding that the County was committed to capitalization of regulated earnings as the sole acceptable approach to evaluation. Since the dismissal of the action was grounded primarily on that finding, we hold that the judgment appealed from must be reversed and the petition reinstated.
We feel compelled to disagree, moreover, with certain fundamental conclusions in the final judgment on the substantive questions considered. Essentially, the trial judge excluded capitalization of earnings (regulated or unregulated) as a method of valuing the whole property, and held, apparently as a matter of law, that the utilities were to be valued by adding reproduction cost new of the tangible assets less depreciation to a figure for "going concern" value. This we think was error. The case law and treatises on eminent domain reveal a multitude of valuation methods which have been considered appropriate to value public service corporations in particular cases. 4A Nichols on Eminent Domain, § 15.4 and following (3rd ed. J. Sackman 1971), and cases cited therein. The conclusion to be drawn is simply that the proper valuation method or methods for any given case are inextricably bound up with the particular circumstances of the case. Sub judice, despite the voluminous appellate record, the proceedings are still in the pleading stage. Nothing is yet known of the financial health and/or potential of the appellees. It is too soon, in our judgment, to make a pronouncement on the proper method of valuation. Such a pronouncement should certainly await the introduction of appraisal testimony at trial, and would be an appropriate subject for jury instructions.
The most that can be said with certainty on the basis of the pleadings in this cause is that Florida's "full compensation" standard [Fla. Const., Article X, Section 6 (a)] requires that the method of valuation which is utilized take into consideration the value of the contributed property. In this respect we agree with the able analysis of the trial judge and approve the portions of his decision quoted below:
"The so-called contributed property owned by defendants, and which the County seeks to acquire by condemnation, constitutes property within the meaning of Article X, Section 6(a), Florida Constitution. *640 The term `property' has been defined as follows:
"`... Property, in a legal sense, consists in the domination which is rightfully and lawfully obtained over a material thing, with the right to its use, enjoyment and disposition.' United Contractors, Inc. v. United Construction Corp., Fla.App. 1966, 187 So.2d 695, 701; Tatum Bros. Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623.
"The manner in which defendants came to own this property does not operate to exclude it from the otherwise applicable constitutional requirements.
"`Constitutional protection against confiscation does not depend on the source of the money used to purchase the property. It is enough that it is used to render the service.' Board of Public Utility Commissioners v. New York Telephone Company, 271 U.S. 23, 46 S.Ct. 363, 70 L.Ed. 808.
"In Peoples Natural Gas Company v. Pennsylvania Public Utility Commission, 153 Pa.Super. 475, 34 A.2d 375, the Court held:
"`... That appellant owns the property and is using it in the service is unquestioned. And, so long as present value is the test, it makes no difference whether appellant bought it, received it as a gift, or won it in a lottery.' (Emphasis supplied)
"Re Marin Municipal Water District (California Railroad Commission) P.U.R. 1915C, 433, was a proceeding before the California Railroad Commission to fix just compensation for lands and property of a private water company. The question of valuation of contributed property was succinctly settled by the Commission (at page 473):
"`As the property donated to the water company now belongs to it, the water company is, of course, entitled to have this property valued in this proceeding.'
"The condemnation of utility property is entirely different from the rate-making process. The complete dissimilarity between rate-making concepts and the just or full compensation standards which govern eminent domain have resulted in rejection of attempts to equate rate-making with eminent domain as a basis for determining fair market value. As stated by the Court in Onondaga County Water Authority v. New York Water Service Corp., 285 App.Div. 655, 139 N.Y.S.2d 755:
"`... The complete lack of similarity between the original cost used in rate-making and the "just compensation" for the purpose of taking needs no comment ... Further, an interpretation of [the statute] as fixing the rate base as a measure of "just compensation" would, at the least, be contrary to the legislative intent and, at the most, unconstitutional ...'
"And in Puget Sound Power & Light Co. v. City of Payallup [Puyallup], C.A.9th 1931, 51 F.2d 688, the Court said:
"`... The problem presented in a condemnation proceeding is essentially different from that presented to a rate-making body or to the courts in the consideration of whether or not rates thus established are confiscatory. In condemnation proceedings, "just compensation" is the market value of the property taken. In rate-making cases the standard of market value of the investment cannot be applied in determining just compensation.... The province of the court in such a matter is confined to the duty of preserving to the owner of property the fundamental right guaranteed to him by the Constitution that his property shall not be taken from him without just compensation, and for that purpose to prohibit the nibbling away of *641 his property by the fixing of rates which gradually but effectively destroy the value thereof.'"
Since regulated earnings place no value on contributed property, it follows that capitalization of regulated earnings is unacceptable as a method of valuing appellees' property in this proceeding. It does not follow that capitalization of earnings generally, provided the private corporation is profitable, should be excluded as a method of valuation, and we do not so exclude it. If, however, in practice, the method should prove too speculative, or if it becomes apparent that it fails to consider some elements of the value of appellees' property, the trial judge will have the prerogative of excluding it at trial.
It is probable that the speculation inherent in projecting a company's past earnings into the future as a measure of value, coupled with the lack of a market for utility property, have led to the widespread use of the "reproduction cost method" of valuing public service corporations, advocated by the trial judge. This method involves determining the cost of reproduction of the facilities new less depreciation plus "going concern" value. The latter figure is a value given to the intangible assets of the business reflecting efficient operation such as good will, expert management technique and efficient organization. If this method appears the most useful at trial in arriving at full value, it may of course be adopted by the trial judge.
But whatever method is ultimately chosen, the litigants and the trial court should bear in mind that the objective is full compensation to the property owners, and that all valuation methods are only tools to this end. Dade County v. Brigham, 47 So.2d 602 (Fla. 1950); State Road Department v. Chicone, 158 So.2d 753 (Fla. 1963). Even fair market value as an overriding compensation standard has been rejected by Florida Courts on those occasions where it has not led to an accurate determination of full compensation. Jacksonville Expressway Authority v. Henry G. DuPree Co., 108 So.2d 289 (Fla. 1959).
Therefore, for the reasons stated, the judgment of the trial court is reversed with instructions to reinstate the fourth amended petition of Dade County. The cause is hereby remanded to the Circuit Court in and for Dade County for further proceedings not inconsistent with this opinion.
It is so ordered.
ROBERTS, C.J., CARLTON and ADKINS, JJ., and SPECTOR, District Court Judge, concur.
DEKLE, J., concurs specially with opinion.
DREW, J. (Retired), concurs specially with opinion.
DEKLE, Justice (specially concurring):
I concur specially with the comprehensive opinion herein in order to add that it appears consistent with our holding regarding "contributed property" that the jury should hear and consider all facets of this question, including any depreciation, maintenance and related factors bearing upon its true value to the public utility holding title.
Evidence thereon should be received and instructions given so that the jury may fully consider and either include or reject all or any part of such contributed property in arriving at full compensation.
DREW, Justice, Retired (concurring specially):
I concur only in the judgment reversing this cause and directing the reinstatement of the Fourth Amended Petition of Dade County and so much of the majority opinion that disposes of the first question, namely: "that the County acted in bad faith and without the requisite necessity" in this eminent domain proceeding.
*642 I am of the view that the remainder of the opinion relates to matters which should be disposed of in the actual trial of the proceedings  if such trial ever takes place.
NOTES
[1] Subsequent to the initial pleadings of the County, General Waterworks itself acquired its five co-defendant utility companies, and these were accordingly dropped from the proceedings, leaving General Waterworks as the only principal defendant.
[2] "Prior to the date of trial, the court may hold a hearing, in limine, to settle all disputed matters properly before it which must be determined prior to trial. Should it appear that the causes of action joined cannot be conveniently disposed of together, the court may order separate trials; provided, however, that any such actions shall be tried in the county in which the lands are located."
[3] In this context, contributed property refers generally to pipelines and other equipment installed by developers and others at their own expense as a condition precedent to obtaining water and sewer facilities from the private utilities. Apparently, following installation, the equipment was deeded to the utilities, without reimbursement to the developers. The practice was prevalent prior to 1960, at a time when the utilities were unregulated. Under the present Dade County regulatory scheme, contributed property is excluded from consideration in determining the utility's rate-base; thus, the practice has been discontinued. See Metropolitan Dade County Code, § 32-65(c), and Westwood Lake, Inc. v. Dade County, 264 So.2d 7, Fla., opinion filed April 5, 1972.