275 So.2d 551 (1973)
DIVISION OF BOND FINANCE OF the DEPARTMENT OF GENERAL SERVICES of the State of Florida, an Agency and Public Body Corporate of the State of Florida, and the Division of Building Construction and Maintenance of the Department of General Services, an Agency of the State of Florida, Appellants,
v.
R. Bartow RAINEY et al., Appellees.
No. S-102.
District Court of Appeal of Florida, First District.
April 3, 1973.
Rehearing Denied April 18, 1973.
*552 Robert L. Shevin, Atty. Gen., Daniel S. Dearing, Chief Trial Counsel, Dept. of Legal Affairs, for appellants.
L. Ralph Smith, Jr., Smith, Moore & Huey, Tallahassee, and David W. Foerster, Jones, Foerster & Hodge, Jacksonville, for appellees.
WIGGINTON, Judge.
Petitioners in eminent domain have appealed a final judgment based upon a jury verdict awarding compensation to appellees for the taking of their land involved in this proceeding. The primary thrust of the appeal is directed toward the rulings of the trial court which permitted appellees to introduce into evidence over appellants' objection the opinions of expert witnesses concerning the extent to which the raw value of the land condemned was enhanced by investments made by appellees toward development of the land for its highest and best use immediately prior to and at the time of the institution of this action.
The parcel of land involved in this suit consists of almost an entire city block lying directly across the street from one of the legislative towers recently constructed as a part of the state capitol. Appellees formulated plans which contemplated the acquisition of the land and the construction thereon of a high-rise office tower which the evidence establishes to be the highest and best use of the property. To effectuate those plans, appellees acquired options from the owners of the land which they later purchased at a price of $705,000.00. Appellees made additional investments in pursuance of their plan by entering into contractual relations with an architect who agreed to and, in fact, did prepare plans, specifications and drawings for the construction of a high-rise office building and parking garage. Appellees also made additional investments in the securing of firm loan commitments in the amount of $4,265,000.00 for the acquisition of the land and construction of the planned improvement. In addition, appellees made further investments in securing boundary and topographical surveys; in securing engineering tests and analyses of subsurface soil conditions; in entering into contractual relations with a building contractor who worked with the owners and their architect in the preparation of plans and specifications for the contemplated improvement, and who in fact commenced construction of the building under a written contract with the owners to construct the improvements within the limits of the loan commitments theretofore secured. The expert witnesses whose testimony was objected to by appellants all testified that the additional investments made by appellees over and above the cost of the raw land were made in furtherance of the highest and best utilization of the property, were prudent investments, and in fact increased the value of the raw land to the amount testified to by them.
In its instructions to the jury the trial court charged that in arriving at the fair market value of the land, the jury could take into account not only the amount paid by appellees for the raw land itself but also the extent to which the other investments *553 made by appellees in the development of the land for its highest and best use added to the fair market value of the land as of the date the suit was filed.
The record reflects without dispute that after appellees announced their intentions to start construction of the office building complex, certain officials of our state government, including members of the Legislature, registered objections to a high-rise office building being constructed on land directly across the street from the state capitol. As a result of such objections, negotiations commenced between appellees and the executive department of state government looking to an agreement whereby appellees would convey to the State the land at a figure which would make them whole in light of the investments made and expenses theretofore incurred in furtherance of the project. As a result of these negotiations, an agreement was reached whereby the State would purchase from appellees the land for an agreed purchase price of $1,200,000.00. Such proposed agreement was submitted to the Legislature then in session for its approval, which submission was rejected, the proposal disapproved, and instructions given to commence immediately the acquisition of the land by the exercise of the power of eminent domain. This suit was subsequently instituted, and appellees were enjoined from proceeding further with the construction of the building then in progress. After trial, the jury rendered its verdict awarding compensation to appellees in the amount of $1,329,000.00, which verdict was confirmed by the court and incorporated in the final judgment appealed herein.
Under appellants' concept of what constitutes full compensation as guaranteed by our Constitution,[1] the only amount to which appellees are entitled is the fair market value of the raw land calculated as of the date this action was instituted. Appellants urge that the evidence to which they objected concerning the additional investments made by appellees in the furtherance of their project were noncompensable consequential damages resulting from a frustrated business scheme or unrealized business opportunity which added nothing to the value of the land, were speculative and conjectural and therefore inadmissible as elements going to make up the fair market value of the land.
We are unable to agree with appellants in their characterization of the elements considered by appellees' expert witnesses in arriving at what they testified to be the fair market value of the land at the time of taking. There was no attempt to prove that appellees suffered any kind of business damage nor that they claimed compensation for loss of a business opportunity. The testimony is that the investments which they made in effectuating a plan which, if allowed to run its course, would materalize in the finished construction and financing of a high-rise office building added to the value of the land itself and would be factors which any able and willing buyer would take into consideration in determining what he would pay as the purchase price of the entire package comprising the project as it stood at the time this suit was filed. It is our view that these were, therefore, proper elements to be taken into account in arriving at the value of the land as it stood at the time construction was halted by the State's election to acquire it through the medium of this proceeding.
The true spirit of our constitutional guarantee for full compensation to a private landowner whose property is taken for a public use was enunciated by our Supreme Court in Jacksonville Express Authority *554 v. Henry G. DuPree Co.[2] when considering whether the landowner's cost of moving personal property owned by him off land being condemned for public use was a proper element of compensation to which he was entitled. In holding in the affirmative, the court said:
"Although the contention that moving costs have no bearing on the fair market value of the premises may be meritorious in other jurisdictions, it has no merit in Florida, where an owner is constitutionally guaranteed full or just compensation. The theory and spirit of such a guarantee require a practical attempt to make the owner whole. Dade County v. Brigham, supra [Fla.] 47 So.2d 602; Dade Co. v. Houk, Fla., 1956, 89 So.2d 649. A person who is put to expense through no desire or fault of his own can only be made whole when his reasonable expenses are included in the compensation."
It is our view that the trial court ruled correctly in holding that the investments made and expenses incurred by appellees in the development of their bona fide plan to utilize the land owned by them in a manner consistent with its highest and best use were proper elements to be considered by the jury in determining the extent to which such investments and expenses enhanced the value of the raw land for the purpose of determining its fair market value at the time of taking. It cannot be reasonably contended that such elements would not be considered by a willing buyer interested in purchasing the entire package and completing the project at its stage of completion on the date this suit was filed. As said by the Supreme Court in the case of Dade County v. General Waterworks Corporation:[3]
"But whatever method is ultimately chosen [for fixing the full compensation to be awarded for land being condemned], the litigants and the trial court should bear in mind that the objective is full compensation to the property owners, and that all valuation methods are only tools to this end... ."
The amounts invested by appellees in the project which was under construction at the time this suit was filed are not in dispute. The extent to which such investments enhanced the value of the land at the time of taking is established by the opinions of competent experts whom the jury had a right to believe. Their testimony does not appear to be either fanciful, speculative, or conjectural. It is obvious that the State rejected an opportunity to purchase the land in question at what at one time was agreed to be its reasonable value and elected to acquire it by the sovereign right of eminent domain. The fact that the amount of compensation awarded by the jury was in excess of the amount which petitioners hoped it would be is not a cause for finding error in the proceedings conducted by the able trial judge presiding during the trial of this cause, nor does it justify the formulation of unduly restrictive principles of law which by any business standard would result in an award of less than full compensation to a property owner whose land is taken for public use at a point in time when he is in the process of developing it for a legitimate purpose consistent with its highest and best use.
We have considered the remaining points urged for reversal but find them to be without substantial merit. The judgment appealed is accordingly affirmed.
SPECTOR, C.J., and CARROLL, DONALD K., J., concur.
NOTES
[1] Art. X, § 6(a), Constitution of Florida  Eminent Domain, F.S.A. 

"No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner."
[2] Jacksonville Expressway Authority v. Henry G. DuPree Co., (Fla. 1959) 108 So.2d 289, 292.
[3] Dade County v. General Waterworks Corporation, (Fla. 1972) 267 So.2d 633, 641.