S. H. KRESS & COMPANY v. DOROTHY POWELL, a minor, by her next friend, MARY POWELL

180 So. 757.
Division B.
Opinion Filed April 25, 1938

472

*Watson & Pasco & Brown,* for Plaintiff in Error;
*Coe & McLane,* for Defendant in Error.

BROWN, J.—Dorothy Powell, a minor, by her next friend, Mary Powell, brought an action at law against S. H. Kress & Company to recover for false imprisonment and malicious prosecution. The declaration consisted of two counts Demurrer to the declaration was overruled. Pleas were then filed, and the court sustained a demurrer to the third, fifth and seventh pleas to the first count, and the third, fifth, seventh, eighth, ninth and eleventh pleas to the second count of the declaration. Trial was had, and the jury found for the plaintiff and assessed her damages at $650.00.

From the judgment entered upon that verdict, the defendant took this writ of error.

The first count of the declaration reads:

"The plaintiff, Dorothy Powell, a minor, by her next friend, Mary Powell, by her attorneys, sues the defendant, S. H. Kress & Company, a Corporation, for that heretofore, to-wit, on and prior to the 24th day of December, A. D. 1934, the defendant was engaged in the operation of a retail chain store in the City of Pensacola, Escambia County, Florida, and therein employed as manager one Faircloth, whose duty it was to manage and conduct the business and to guard its interests against theft, pilferage, passing of spurious coin and other misdemeanors liable to result in monetary loss to his employers and on the said date, the plaintiff, a minor female of the age of seventeen (17) years, entered said store as a customer to purchase goods and tendered in payment thereof a five dollar bill, lawful money of the United States, but the said Faircloth, acting in his capacity as manager aforesaid, inspected the said five dollar bill and falsely declared the same to be counterfeit, and then and there caused the plaintiff to be detained in said store, gave her into the custody of a policeman and caused her to be falsely imprisoned in the police station of the City of Pensacola, from which imprisonment she was duly discharged upon subsequent inspection of the said five dollar bill by the proper officers of said city, it being apparent that the same was genuine. And the detention and delivery of the plaintiff to said policeman occurred in the presence of a large number of persons in the store of the defendant during the busy hours of Christmas eve, and plaintiff was embarrassed, humiliated and greatly damaged thereby and by the imprisonment consequent thereon; for all of which she sues and claims one thousand five hundred ($1,500.00) dollars damages."

It is contended that the demurrer to the declaration should have been sustained, because even though it be admitted that Faircloth, the manager of the Kress store in Pensacola, had the duty of protecting the interests of the Kress Company from theft, pilferage, and the passage of spurious coin, yet such duty did not carry with it implied authority to do the alleged acts complained of so as to bind the defendant; that the declaration does not allege any evpress authority to do those acts, and there is no allegation of ratification by the defendant of them.

Each count alleges that Faircloth had the express duty "to manage and conduct the said business, and to guard its interests against theft, pilferage, passing of spurious coin and other misdemeanors liable to result in monetary loss to his employers." The first count alleges that Faircloth "then and there caused plaintiff to be detained in said store, gave her into the custody of the policeman and caused her to be falsely imprisoned in the police station in the City of Pensacola." The second count alleges that Faircloth, acting as defendant's agent, "commenced a criminal proceeding for the passage of counterfeit money against the plaintiff by then and there summoning a policeman and delivering the plaintiff to his custody and informing the said policeman that the said plaintiff had attempted to pass a counterfeit five dollar bill and by causing the said policeman to take the said plaintiff into his custody upon the said charge and conduct her to the police station of the City of Pensacola, which said prosecution was terminated in favor of this plaintiff upon the inspection of the five dollar bill by the proper officers of the City of Pensacola, who determined the same to be genuine."

There have grown up in this country large businesses, which usually have their principal offices in some large city with numerous branches or units of that business in many

other states in the Union. The principal officers of the corporation are to be found only at the home office of the corporation. In each unit or branch of the business is placed in authority one who is generally designated as the "manager" of the local unit, and who usually has the authority to select and to discharge his employees, to place orders for merchandise with the parent organization, and in some businesses to purchase merchandise from other corporations. The "manager" is responsible in a general way for the prosperity and welfare of the local unit of that particular business. He is not to be classed with a mere clerk or employee; he is a vice-principal. To permit a corporation of this type to escape liability for the acts of its "manager" on the ground that he is not one of the principal officers of the corporation and that he must have actual express authority to do the particular thing in question would be going entirely too far afield from the realities, because for all practical purposes, the "manager" is the head of the corporation so far as the local unit of the business is concerned, and wrongful acts of the "manager" which are done in behalf of the corporation's interests there, if they cause injury or damage to another, will make the corporation liable. Hotel Tutwiler Operating Co. v. Evans, 208 Ala. 252, 94 So. 120, also 35 A. L. R. 695, et seq., and 77 A. L. R., 927, 936, where cases pro and con are cited.

"The term 'manager' applied to an officer or representative of a corporation, implies the idea that the management of the affairs of the company has been committed to him with respect to the property and business under his charge. Consequently his acts in and about the corporation's business so committed to him, is within the scope of his authority. 5 Words & Phrases, First Series, p. 4319; Sullivan v. Evans-Morris-Whitney Co., 54 Utah 293, 180 P.

435. The designation 'manager' implies general power, and permits a reasonable inference that he was invested with the general conduct and control of the defendant's business and his acts are, when committed in the line of his duty and in the scope of his employment, those of the company." Newark Shoe Co., 190 N. C. 406, 130 S. E. 32, citing numerous authorities.

The acts alleged in the first count to have been done by Faircloth, the "manager" of the Kress store in Pensacola, were impliedly authorized by the defendant, if done in pursuance of any of the express duties alleged. There is a very close relation between the duty of protecting the interests of the defendant against the passage of spurious coin and other misdemeanors liable to result in monetary loss to the company, and the alleged act of the "manager" in causing the detention or false imprisonment of the plaintiff because of an erroneous belief that a five dollar bill she attempted to pass in the Kress store was counterfeit.

The alleged act of the "manager" in causing plaintiff to be taken to the police station was not necessarily done solely for the purpose of vindicating public justice, which is generally not actionable; Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214; but may also have been done to prevent the plaintiff from later passing or attempting to pass the same five dollar bill in the defendant's store in exchange for merchandise, which the "manager" may have believed would result in financial loss to his company, as well as to prevent others from doing similar acts. See United Cigar Stores Co. v. Young, 36 App. D. C. 390; Hostettler v. Carter, 73 Okla. 125, 175 Pac. 244 Whether the allegations of the first count were proven was, under the evidence adduced, and such reasonable inferences as might be drawn therefrom, a question for the jury.

The general principle for which plaintiff · in error con-
tends, as applied to mere servants, or clerks, has been recog-
nized by this Court in the case of ·Winn & Lovett Grocery
Co. v. Archer, *supra,* wherein this Court, speaking through
Mr. Justice DAVIS, said:

"There is a marked distinction between a false imprison-
ment or arrest caused by an agent for the purpose of pro-
tecting property, or recovering it back, and an arrest or
imprisonment caused for the purpose of punishing an of-
fender for an act already done. Ordinarily there is no
implied authority in a servant having the custody of prop-
erty, to take such steps as he thinks. fit to punish a person
who he erroneously supposes has committed a crime against
the property, and the trend of decision is against holding
the master liable when the arrest has been made after the
supposed crime has been committed, and not for the pro-
tection of his property or interests. In such cases the agent
is presumed to have acted on his own account, for the vin-
dication of justice, since his agency relates solely to the
property, and the act of punishing the offender is not any-
thing done with reference to it." (Citing authorities.)
"However, there is clearly an implied authority to do all
things that may be proper and necessary for the protection
of the property (Carter v. Howe Mach. Co. [1879], 51 Md.
290, 34 Am. Rep. 311) ; and it has been held that where a
servant has reason to believe that property has actually
been stolen, and that he can recover it by taking the sup-
posed ·thief into custody, and the evidence shows beyond
question that the object which the servant had in view in
procuring the arrest of the plaintiff was not ·to vindicate
public justice, but to recover the property, or charges due
thereon, the servant is acting within the scope of his em-
ployment and the limits of the implied authority, and the
master is liable, however erroneous, mistaken, or malicious

the act may be. Cameron v. Pacific Exp. Co. (1892), 48 Mo. App. 99. See Allen v. London & S. W. R. Co. (1870), L. R. 6 Q. B. (Eng.) 65, 40 L. J. Q. B. N. S. 55, 23 L. T. N. S 612, 19 Week, Rep 127, 11 Cox. C. C. 621. For other cases holding that the employer is liable when an employee falsely arrests a person in protecting the property of the principal or corporation when the person falsely arrested had none of the property, see Field v. Kane, 99 Ill. App. 1; Knowles v. Bullene, 71 Mo. App. 341; Ataples v. Schmid, 18 R. I. 224, 26 Atl. Rep. 193, 19 L. R. A. 824."

In the case from which this quotation is taken, the defendant corporation was sued for damages for false imprisonment alleged to have been caused by one of the clerks in defendant's grocery store. In the case at bar we are dealing with the acts and conduct of the manager of the store, and while the declaration omits any allegation to the effect that the acts and conduct of said manager were done in pursuance of any effort to recover possession of any property which the plaintiff had obtained from the store in exchange for the five dollar bill which the plaintiff had tendered in payment of goods purchased or attempted to be purchased, it does allege that it was the duty of said manager to guard the interests of the defendant corporation against the passing of spurious coin and other misdemeanors liable to result in monetary loss to his employers, and that, acting in his capacity as such manager, he inspected the five dollar bill tendered by the plaintiff, falsely pronounced it to be counterfeit, and caused the plaintiff to be detained in the store and given into the custody of a policeman, etc. Our conclusion is that neither of the counts of the declaration were subject to demurrer on the ground that the same failed to show that Faircloth was acting within the scope of his authority as manager of the store, and that, under the facts alleged, the declaration failed to

show that the defendant corporation was legally liable for any damage caused by the acts of said manager which the declaration complains of.

The second count of the declaration purported to be a count for malicious prosecution. However, the demurrer interposed thereto was upon practically the same grounds as those upon which the demurrer to the first count was based. We have already dealt with those grounds dealing with the question of the defendant's liability for the acts of its store manager, which are common to both counts. But the demurrer to the second count also contained this ground: that "said count states no cause of action against this defendant." Such a general ground of demurrer is not a compliance with the statute, which requires the substantial matters of law intended to be argued to be stated, and will not avail, unless, upon a bare inspection of the pleading demurred to, it should be found so faulty and defective as to constitute no cause of action, or defense, as the case may be. Heathcote v. Fairbanks, Moss & Co., 53 So. 950, 60 Fla. 97; Wauchula Development Co. v. Peoples Stockyards Bank, 86 Fla. 298, 98 So. 220. The fact is that the second count contains allegations of specific facts, which are substantially the same as the allegations of facts contained in the first count, and hence these allegations, if extricated from the legal conclusions of the pleader to which they are attached, might be sufficient to substantially charge *false imprisonment,* but they were not, under our decisions, on even a cursory examination thereof, sufficient to state a cause of action for *malicious prosecution,* which was the purported purpose of this count. The "summoning of a policeman and delivering the plaintiff to his custody and informing the policeman that the plaintiff had attempted to pass a counterfeit five dollar bill" was not the commencement of a judicial proceeding, and did not in-

volve the issuance of legal process, so as to constitute malicious prosecution; nor did the additional allegations that this was done maliciously and without probable cause, and that this so called "prosecution terminated in favor of the plaintiff upon inspection of the five dollar bill by the proper officers of the City of Pensacola who determined the same to be genuine," supply the defect, or show that any *judicial proceeding* was terminated in plaintiff's favor.

In the case of Tatum Bros. Real Estate & Inv. Co. v. Watson, 92 Fla. 278, 109 So. 623, this court held that:

"The gist of the action of malicious prosecution is that plaintiff has been without probable cause and maliciously made the subject of legal process resulting in his damage.

"An action for maliciously putting the law in motion lies in all cases where there is a concurrence of the following elements; (1) The commencement or continuance of an original criminal or civil judicial proceeding. (2) Its legal causation by the present defendant against plaintiff who was defendant in the original proceeding. (3) Its *bona fide* termination in favor of the present plaintiff. (4) The absence of probable cause for such proceeding. (5) The presence of malice therein. (6) Damage conforming to legal standards resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action."

To like effect see Duval Jewelry Co. v. Smith, 102 Fla. 717, 136 So. 878, 38 C. J. 386-387; and Fisher v. Payne, 93 Fla. 1085, 113 So. 378. In the last cited case, this Court dealt with some of the distinctions between false imprisonment and malicious prosecution, in the course of which it was said that "False imprisonment is the unlawful restraint of a person contrary to his will," to recover damages for which an action of trespass must be brought, the gist of which is the unlawful detention of the plaintiff. See

also 11 R. C. L. 791-793, and Crandall's Fla. Common Law Prac., Section 115.

In 25 C. J. 444-447, it is well said:

"Although not always observed, the distinction between malicious prosecution and false imprisonment is fundamental. But briefly, the essential difference between a wrongful detention for which malicious prosecution will lie, and one for which false imprisonment will lie, is that in the former the detention is malicious but under the due forms of law, whereas in the latter the detention is without color of legal authority. In malicious prosecution plaintiff must allege and prove malice and want of probable cause and the termination of the proceeding favorably to plaintiff, whereas in false imprisonment the allegation of want of probable cause is not essential, and the burden is on defendant to prove probable cause as a defense or in mitigation. Malice is material only on the issue of damages, and the termination of the proceeding is not material. If the imprisonment is under legal authority it may be malicious but it cannot be false. This is true where legal authority is shown by valid process, even if irregular or voidable. Void process will not constitute legal authority within this rule."

By overruling the demurrer to this defective count, which ruling we deem to have been erroneous, the element of malice, which was not mentioned in, nor essential to, the first count, was expressly injected into the pleadings in the case, and this issue with regard to malicious prosecution, without probable cause, was submitted to the jury, and charged upon by the court. Thus one of the grounds of the motion for new trial was the giving by the Court of charge No. 1 requested by the plaintiff, which was:

"The court charges you that the malice charged in the second count of the declaration does not necessarily mean

personal malevolence or ill-will, but merely means that state of mind wherein one willfully or recklessly does a wrongful act to the injury of another, and the jury in such cases may in their discretion infer the existence of malice from the institution of a criminal proceeding when probable cause so to do does not exist."

The court also refused to direct a verdict in favor of the defendant on this second count, made when the taking of testimony was closed, although the evidence was not sufficient to prove a malicious prosection as thereby attempted to be charged, nor indeed was it sufficient to prove actual malice under the first count, even if it had been expressly charged therein.

The court sustained demurrers to certain of defendant's pleas, but those pleas which were held good against demurrer were sufficient to permit the defendant to present to the court and jury all defenses which it endeavored to present by evidence offered, including the defenses attempted to be set up in the pleas which went out on demurrer. We have carefully considered these pleas, the demurrers thereto, and the court's rulings thereon, and our conclusion is that no harmful or reversible error appears.

Defendant in error contends that where the verdict is general, as it is here, it will not be set aside on motion for a new trial if one sufficient count of the declaration was sustained by the evidence; citing 46 C. J. 192, and cases therein cited; also citing Section 4501 of the Compiled General Laws of 1927. This later section, and the one preceding it, relate to motions in arrest of judgment. Said Section 4501 provides, among other things, that no judgment after the verdict of the jury, shall be stayed or reversed for any faulty count in the declaration where the same declaration contains one count which is good, or for any imperfection, omission, defect or lack of form in any plead-

ing, not affecting the merits of the cause; unless the party making the objection was injured by the irregularity, or unless the objection was made before the returning of the verdict.

As above shown, there was a demurrer interposed to the second count, also a motion for a directed verdict in favor of the defendant on that count, and an exception taken to certain charges which were given with relation to that count which were not applicable to the first count, and which tended to the prejudice of the interest of the defendant to a trial of the issues raised by the first count and the pleas interposed thereto.

It is quite generally held that if defects or insufficiencies of the pleadings do not affect the determination of the case upon the merits or prejudice the substantial rights of the opposite party, they afford no basis for a reversal. 5 C. J. S. page 846.

And on page 861 of the same work it is said that: "Error in overruling a demurrer is harmless only where there are circumstances which show that the fact that the pleading was permitted to stand could have had no effect on the final result." Numerous cases are cited in support of this general principle, which principle appears to be recognized by the language of the latter part of Section 5401 C. G. F.

Applying these principles to the rulings above referred to, relating to the second count of the declaration, our conclusion is that harmful error was committed in overruling the demurrer to, and later declining to instruct a verdict for defendant on said second count, and the giving of charges relating to malice based thereon, which requires a reversal of this case.

Generally speaking, there are but two kinds of damages which are recoverable in actions of tort—compensatory and punitive.

In an action for malicious prosecution, exemplary or punitive (sometimes called vindictive) damages are recoverable where actual malice and want of probable cause are shown, or where the legal proceedings complained of were commenced under circumstances of oppression, wantonness, or a reckless disregard of plaintiff's rights. 38 C. J. 448-449.

In an action for false imprisonment, which may be brought regardless of whether there was, or was not, malice, the elements of recoverable *compensatory* damages may include bodily injuries or physical suffering, which are the proximate result of the unlawful imprisonment, or illness caused thereby; physical inconvenience and discomfort suffered by reason of the conditions of the place of confinement; loss of time, and losses sustained in the business or employment of the plaintiff; expenses incurred as a result of the unlawful imprisonment; mental suffering endured because thereof, such as embarrassment, humiliation, deprivation of liberty, disgrace and injury to the feelings of the person unlawfully imprisoned, as well as injury to his reputation, resulting therefrom. 25 C. J. 556-560. In this case the elements charged are embarrassment, humiliation and deprivation of liberty. In the case of Smith v. Bagwell, 19 Fla. 117, this Court held:

"Compensatory damages are defined as such as arise from actual and indirect pecuniary loss, mental suffering, value of time, actual expenses, and bodily pain and suffering. Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the sufferer but also a punishment to the offender and an example to the community."

In the case of Winn & Lovett Grocery v. Archer, 126

Fla. 308, 171 So. 214, this Court, speaking through Mr. Justice Davis, said:

"Exemplary damages are given solely as a punishment where torts are committed with fraud, actual malice or deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. Exemplary or punitive damages are therefore damages *ultra* compensation, and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as an offense against the State, or consists of aggravated misconduct or a lawless act resulting in injury to plaintiff, when sought to be redressed by a civil action for the tort.

"Exemplary or punitive (sometimes called vindictive) damages are assessable dependent on the circumstances showing moral turpitude or atrocity in the defendant's conduct in causing an injury that is wanton and malicious or gross and outrageous to such an extent that the measured compensation of the plaintiff should have an additional amount added thereto as 'smart money' against the defendant, by way of punishment or example as a deterrent to others inclined to commit similar wrongs." * * *

"In order to recover exemplary or punitive damages the declaration must allege some general facts and circumstances of fraud, malice, gross negligence or oppression tending to show plaintiff's right to recover such damages in addition to damages by way of compensation. But punitive or exemplary damages need not be described or demanded in the declaration by that name, in order to be recoverable." (Citing many authorities.)

See also 25 C. J. 562, where it appears that circumstances of aggravation attending the tort sued for, may form the

basis for enhancing the allowance of compensatory damages which are otherwise recoverable, which principle was recognized in Winn & Lovett Grocery v. Archer, *supra*. The reason for this rule perhaps is that the aggravated character of the wrongful conduct, when attended for instance, by harsh or insulting language, or needlessly violent and oppressive measures, may well cause greater humiliation or mental pain. There was no evidence of such circumstances of aggravation in this case.

See also 11 R. C. L. 819-821.

It is not necessary to go into a discussion of the evidence in this case, except to say that there is no evidence of any express or actual malice shown. While the plaintiff did not make out a strong case by any means, there was enough evidence to submit the case to the jury upon the first count in the declaration. But the amount of the verdict is probably larger than would have been allowed if the case had been tried on that count alone. While the store manager may have been overzealous in his conduct, when the suspicious looking five dollar bill was brought to his attention, and the taking of the young lady plaintiff to the police station for the bill to be inspected was not justifiable, the conduct of neither the manager nor the policeman was discourteous nor attended by "circumstances of aggravation," and the court's charge with relation to that element of enhancement of damages was not justified by the evidence.

For the reasons above pointed out the judgment of the court below will be reversed and the cause remanded.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.