183 So.2d 16 (1966)
John P. THOMPSON, Clifford W. Wheeler, and Jere W. Thompson As Partners d/b/a Seven-Eleven Food Stores, Appellants,
v.
Edward R. TAYLOR, Appellee.
No. F-345.
District Court of Appeal of Florida. First District.
February 1, 1966.
Rehearing Denied March 3, 1966.
*17 Cox, Grissett & Webb, Jacksonville, for appellants.
S. Perry Penland and Edward Rich, Jacksonville, for appellee.
RAWLS, Chief Judge.
Appellee Edward R. Taylor brought an action for malicious prosecution against the partners of Seven-Eleven Food Stores and obtained a jury verdict and judgment for compensatory and punitive damages. The partners of Seven-Eleven instituted this appeal.
On May 14, 1961, just several days after O'Neal assumed his new duties as manager of a Seven-Eleven Food Store in Jacksonville, his store was robbed of over $800.00 by two armed men. O'Neal immediately called his Seven-Eleven supervisor, Mr. Angley, who in turn called the sheriff's office. On several occasions a deputy sheriff brought photographs for O'Neal's inspection and eventually he identified one as being one of the men involved in the robbery. Based solely on this identification O'Neal made an affidavit and warrant was issued for the arrest of Appellee Edward R. Taylor, whom he later identified in a police lineup as one of the men participating in the robbery. Although Taylor was a Seven-Eleven employee for a short time in 1959, he had not lived in Jacksonville for some time and there is no evidence that O'Neal had met him before the robbery.
When Appellee Taylor was first carried before the committing magistrate, he was not represented by a lawyer so the hearing was continued. Present at this hearing was O'Neal and sitting beside him was Rufus Whiddon, assistant division manager for Seven-Eleven. When asked why he was present, Whiddon testified that he was there on company time "* * * because of Seven-Eleven * * * I was there as an official of the company."
At the second hearing in the Justice of the Peace Court, no Seven-Eleven officials were present except O'Neal who was sworn and his testimony taken. At the conclusion the Justice of the Peace bound Taylor over to the Criminal Court of Record for Duval County, but on February 5, 1962, the case was no billed.
Taylor then brought this malicious prosecution action against the partners of Seven-Eleven alleging that they acted through their servant and employee who was acting within the scope and direction of his employment. At the jury trial the judge permitted five persons who were present at the second hearing in Justice of the Peace Court to testify as to what occurred there because the proceedings were not recorded. The essence of this testimony was that one of the robbers, the one O'Neal believed to be Taylor, held a gun in O'Neal's stomach and the two were "eye to eye" at the time of the robbery so he knew the culprit was his same height. O'Neal requested that *18 Taylor stand beside him. When Taylor stood, it became evident that O'Neal was 2 or 3 inches taller. According to Taylor's testimony O'Neal was then "bewildered", "confused" and "wasn't too sure of himself." O'Neal testified that he then told the Justice of the Peace, "I think we have got the wrong man. This man was tall or taller, or as tall as I am, not near as stout as Mr. Taylor * * * [he] was a slim type of fellow, and he was a little taller, but the picture from here up (indicating), they could go for twins." Taylor's father testified that O'Neal just shook his head to indicate that Taylor was not the right man. Taylor, his father, his attorney, his uncle the Rev. Thomas P. Taylor and witness Oray W. Crawford were all of the opinion or impression that after this incident O'Neal still maintained that Taylor was one of the robbers.
Appellants first contend that O'Neal, their servant, had no actual or implied authority to act for them so they are not liable for his actions. As authority for their position, appellants rely upon Winn & Lovett Grocery Co. v. Archer[1] which states the principles controlling the implied authority of a mere clerk or servant to make a citizen's arrest upon one whom he thinks has stolen his master's goods. Such a principle has no application in this malicious prosecution case, nor can it be applied to an employee whom appellants have designated as their "manager" in charge of the store robbed.
The proof that O'Neal was "manager" implies that the company has committed to him the management of its affairs with respect to the property and business under his charge.[2] Furthermore, the facts adduced at the trial show that Seven-Eleven officials, other than O'Neal, reported the robbery, attended one of the hearings, encouraged apprehension of the culprits, and actively participated in the actions taken by their new employee. It was District Manager Angley who notified the sheriff's office of the robbery, and it was Assistant Division Manager, Rufus Whiddon, who appeared at the first hearing as an official of the company. O'Neal testified that although he discussed the situation with Angley several times, he was never told not to prosecute the case, and on one occasion when he informed Angley that he was going that day to sign the warrant for the arrest, Angley's only remark was to ask if his relief was coming in to take over the store. Angley denied having this conversation and testified that Seven-Eleven had a policy, either "during 1961, before or since then", not to prosecute anyone under any circumstances. For purposes of impeachment on cross examination Angley was confronted with his deposition wherein he was asked,
"Did you have any discussion with him [O'Neal] * * * as to what to do with respect to persons who perpetrated the crime?
"Answer: The only discussion I recall having after that was, well I had several, but one thing was, I think, the only thing in relation to that, I believe I ever said, was that I would like to see them put out of circulation whoever held them up.
"Question: And, I believe later you, and correct me if I'm incorrect, later you learned that there was a suspect in the case, is that correct, sir?
"Answer: Yes, O'Neal did say they thought they had the man or had a good lead on someone or something of that nature."
We conclude that there is no merit in Appellants' first point.
Appellants' principal contention is that the trial judge erred in denying their motion for a directed verdict on the ground that there was an absence of proof of "want *19 of probable cause", one of the essential elements necessary for a judgment for plaintiff in an action for malicious prosecution. We agree. In such an action the burden of proving all the essential elements, including the concurrence of malice and want of probable cause, is on the plaintiff, and to sustain a recovery all such essential elements must be established by a preponderance of the evidence.[3]
"Probable cause is defined as `A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' Dunnavant v. State, Fla., 46 So.2d 871, 874. This, as well as other acceptable definitions of the term, indicates that one need not be certain of the outcome of a criminal or civil proceeding to have probable cause for instituting such an action."[4]
The controlling case is Gallucci v. Milanic.[5] There the Supreme Court held that when the Justice of the Peace conducts his examination into the matter, finds that probable cause exists, and binds the accused over to answer the charge, the binding over is a determination of the existence of probable cause in the absence of allegations and proof that the accuser had resorted to fraud, perjury, or other improper and corrupt means in securing the committal.
There is no showing here that O'Neal resorted to fraud, perjury or other improper means. The only evidence here was that O'Neal told the Justice of the Peace all that he knew  his belief that the culprit was his same height, the fact that the portion of accused shown in the picture looked so much like the hold-up man that they could "go for twins," and the possibility that they may have the wrong man. Even after being confronted with these expressed doubts, the Justice of the Peace determined that probable cause existed and bound Taylor over to the criminal court.
This case involves nothing more than the mistaken identity of the perpetrator of the crime.[6] Had there been proof that O'Neal actually knew that Taylor had not committed the crime but remained silent as to this fact before the Justice of the Peace, and instead positively identified Taylor as the guilty person so that Taylor was prosecuted, then the situation might have warranted a finding of the element of absence of probable cause. Such was the case in Maiborne v. Kuntz.[7] There Kuntz had his neighbor arrested and tried on a charge of grand larceny. After the jury acquitted Maiborne, Kuntz admitted that he did not believe that Maiborne intended to steal the boat. Maiborne, the plaintiff in the malicious prosecution action, had the burden of establishing by a preponderance of the evidence the element of want of probable cause. This Maiborne did, not only by the above admission, but also by positive proof that Kuntz authorized his son to sell the boat and after the boat was sold, he agreed to the sale price of $40, was offered that price but he then refused to accept the purchase money. All of this occurred prior to the time that Kuntz procured the arrest of Maiborne.
Here, the plaintiff completely failed to establish the element of want of probable cause. All authorities confirm the view that once the plaintiff fails to prove absence of probable cause, he loses his case, and although malice may be inferred from *20 want of probable cause, the converse is not true.
Reversed.
CARROLL, DONALD K., J., and SMITH, SAMUEL S., Associate Judge, concur.
NOTES
[1] Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936).
[2] S.H. Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757 (1938).
[3] See Tatum Bros. Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623 (1926); Hopke v. O'Byrne, 148 So.2d 755 (Fla.App.1st, 1963) and others which set out the essential elements necessary for the action to lie.
[4] Goldstein v. Sabella, 88 So.2d 910, 58 A.L.R.2d 1418 (Fla. 1956).
[5] Gallucci v. Milanic, 100 So.2d 375, 68 A.L.R.2d 1164 (Fla. 1958).
[6] See Anno. 43 A.L.R.2d 1049.
[7] Maiborne v. Kuntz, 56 So.2d 720 (Fla. 1952).