197 So.2d 329 (1967)
Saul LEVINE, Petitioner,
v.
Robert KNOWLES, Respondent.
No. 66-798.
District Court of Appeal of Florida. Third District.
March 14, 1967.
As Corrected on Denial of Rehearing April 11, 1967.
*330 Kelner & Lewis, Miami, for petitioner.
Fowler, White, Collins, Gillen, Humkey & Trenam and A. Blackwell Stieglitz, Miami, for respondent.
Before HENDRY, C.J., and PEARSON and SWANN, JJ.
SWANN, Judge.
When the veterinarian, Robert Knowles, reported that "Tiki," a Toy Chihuahua dog, had died while undergoing apparently routine treatment for a skin condition, Tiki's owner, Saul Levine, became upset. He instructed the veterinarian to keep Tiki's body so that he could have an autopsy performed, but the dog's body was cremated before it could be claimed. Levine sued Knowles, alleging negligence or malpractice in the treatment of Tiki, which caused its death, and alleging that the cremation was done "wilfully, wantonly, maliciously and with great indifference to the person, property or rights of" the plaintiff in order to avoid the consequences of the pending autopsy and a probable malpractice claim. For this, he sought compensatory damages and punitive damages.
Knowles admitted to having been instructed to hold Tiki's body for the plaintiff, but he, his nurse, and assistant veterinarian claim that Tiki's body was cremated inadvertently by unknown employees of his clinic.
On this record the Circuit Judge entered an order granting the veterinarian summary judgment as to the claim for punitive damages, striking the claim for punitive damages from the complaint, and then transferring the cause to the Civil Court of Record because the remaining claim for compensatory damages failed to meet the jurisdictional requirements of the Circuit Court. The plaintiff appealed from this order and we have decided to treat the appeal as a petition for common law certiorari under the authority of Tantillo v. Miliman, Fla. 1956, 87 So.2d 413; Easley v. *331 The Garden Sanctuary, Inc., Fla.App. 1960, 120 So.2d 59, 78 A.L.R.2d 1199; Kautzman v. Bandler, Fla.App. 1960, 118 So.2d 256; Elliott v. Lazar, Fla.App. 1958, 104 So.2d 618; Section 59.45, Florida Statutes, F.S.A.
Under the law of Florida, dogs are considered subjects of property or ownership.[1] Dogs are property, taxable as other personal property.[2] The rights of ownership do not cease upon the death of a dog,[3] and it has been held that an action in replevin lies to recover the body of a dead dog. Vantreese v. McGee, 26 Ind. App. 525, 60 N.E. 318 (1901). The Court said in Vantreese, that: "It cannot be reasonably maintained that the owner of such property, by the mere fact of its death, loses title to whatever of value remains in the body. The change of form does not deprive the owner of title to, or right of possession of, property."
It would appear, therefore, that an owner has the same right of action to recover compensatory damages for the intrinsic value, if any, of a dead dog wrongfully destroyed, that he would have for any other property wrongfully destroyed. Similarly, if the destruction were to be caused in such an outrageous manner as to amount to a wilful, wanton, reckless, or malicious disregard of the owner's rights, punitive damages might be recoverable.
Although compensatory damages are sometimes thought of as having an admonitory purpose, they can only fulfill this function when the sum required to repair the plaintiff's loss also happens to be an admonition of the proper severity.[4] In practice, the amount of actual damage caused by the defendant may have little or no relation to the size of the money judgment which would serve as the most effective admonition in a particular case. It is more important to forestall conduct which is likely to cause serious injury than that likely to cause only inconsequential damage.[5]
The seriousness of the probable result of the defendant's conduct, then, is the yardstick for determining the advisability of discouraging such behavior in the future, rather than the seriousness of the damage actually caused.[6]
The doctrine of punitive damages makes the desired admonitory function of certain tort actions more effective than it would be if money judgments were always limited to reparation.[7] This is particularly so where either the compensatory damages are too lenient for admonitory purposes or the payment of compensatory damages only would not handicap the defendant sufficiently to discourage such conduct in the future. That the conduct which gives rise to punitive damages need be wilful, wanton, reckless, malicious or oppressive is to guard against the allowance of punitive damages in cases in which there is no admonitory function; i.e. cases in which there is another objective in making the defendant pay than that of deterring undesirable behavior.[8]
Punitive damages have long been held to lie for the malicious killing of a *332 dog,[9] and our Supreme Court has recognized that the anguish suffered from the loss of a pet dog may be substantial. La Porte v. Associated Independents, Inc., Fla. 1964, 163 So.2d 267. Justice Thomas noted, at p. 269, that "the affection of a master for his dog is a very real thing and * * * the malicious destruction of the pet provides an element of damage for which the owner should recover, irrespective of the value of the animal." (Emphasis added.) This protection should be extended to shield the owner from the unnecessary anguish caused by the wilful, wanton, malicious abuse of his dog's dead body.
In Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188, 17 A.L.R.2d 766, Justice Terrell stated, at p. 189, that:
* * * * * *
"* * * [T]here can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved. * * *
"But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages. * * *"
* * * * * *
In the case before us, Tiki's owner alleged, inter alia, that despite his instructions to hold Tiki's body for him, the defendant wilfully cremated it. He alleged that this was done to avoid the consequences of an autopsy and probable malpractice claim. This stated a cause of action and alleged facts which, if established upon trial, could justify a recovery of punitive damages as well as damages for mental suffering and anguish to the plaintiff. This is conduct which, when wilful or malicious, would tend to put the defendant in as good a position, or a better one than that which he occupied prior to the commission of the tort if it results in the assessment of only compensatory damages.
We do not say that the plaintiff may recover punitive damages without adequate and sufficient proof of his allegations.[10] We only determine that under the facts peculiar to this case, an action for damages was sufficiently alleged by the complaint and the defendant has failed to conclusively demonstrate the non-existence of all material issues of fact so as to be entitled to a summary final judgment.[11]
As we held in Doral Country Club, Inc. v. Lindgren Plumbing Co., Fla.App. 1965, 175 So.2d 570:
* * * * * *
"* * * If there is any evidence tending to show that punitive damages could be properly inflicted, even if the court be of the opinion that the preponderance of the evidence is the other way, the court should leave the question to the jury."
* * * * * *
Accordingly, this cause is reversed and remanded for action consistent herewith.
It is so ordered.
NOTES
[1] Section 811.19, Florida Statutes, F.S.A.
[2] Florida Cent. & P.R. Co. v. Davis, 45 Fla. 276, 34 So. 218 (1903). See also Section 200.01, Florida Statutes, F.S.A.
[3] 3 C.J.S. Animals § 3; 3 C.J. Animals § III, p. 16.
[4] Morris Punitive Damages in Tort cases, 44 Harv.L.Rev. 1173, at 1184, (reprinted in Studies in the Law of Torts 339, at 351 (1952)).
[5] Id. p. 1181.
[6] See Scalise v. National Utility Service, 120 F.2d 938 (5th Cir.1941); S.H. Kress & Co. v. Powell, 132 Fla. 471, 180 So. 757 (1938); Rosenberg v. Ryder Leasing, Inc., Fla.App. 1964, 168 So.2d 678; Hutchinson v. Lott, Fla.App. 1959, 110 So.2d 442; Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Florida, Fla. App. 1958, 106 So.2d 233.
[7] Morris, supra, 44 Harv.L.Rev. 1183.
[8] Id. p. 1190.
[9] See Parker v. Mise, 27 Ala. 480, 62 Am. D. 776 (1855); Jemison v. The Southwestern Railroad, 75 Ga. 444 (1885); Tenhopen v. Walker, 96 Mich. 236, 55 N.W. 657 (1893); Annotation 1 A.L.R. 2d 997, 1008.
[10] See Griffith v. Shamrock Village, Fla. 1957, 94 So.2d 854.
[11] Holl v. Talcott, Fla. 1966, 191 So.2d 40; Visingardi v. Tirone, Fla. 1967, 193 So.2d 601; Hoder v. Sayet, Fla.App. 1967, 196 So.2d 205, (opinion released January 31, 1967).