# Third District Court of Appeal

## State of Florida

Opinion filed September 30, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-275
Lower Tribunal No. 22-13022
_____

**George Buchanan,**
Appellant,

vs.

**Miami-Dade County, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Reemberto Diaz, Judge.

L. Turner Law, P.A., and Lauren N. Peffer (Delray Beach), for appellant.

Geraldine Bonzon-Keenan, Miami-Dade County Attorney, and Hunter R. Pratt, Assistant County Attorney, for appellees.

Before EMAS, MILLER and LOBREE, JJ.

LOBREE, J.

This appeal asks this court to decide whether George Buchanan may

seek damages for intentional infliction of emotional distress ("IIED"), which he suffered when Miami-Dade County Police Officer Adrian Madrigal ("Officer Madrigal") shot and killed his pet dog, Sweetie. The trial court dismissed Buchanan's complaint with prejudice for failure to state an IIED claim because Buchanan failed to allege that he was present when his pet dog was shot. Buchanan asserts that the trial court erred in dismissing his claim on this basis because his case concerns the "unique considerations" that apply in cases concerning dead bodies, and thus he did not have to witness the incident to state his claim, relying upon Williams v. City of Minneola, 575 So. 2d 683 (Fla. 5th DCA 1991). Because, within the context of an IIED claim, the considerations surrounding "improper behavior toward the dead body of a loved one" do not include the conduct at issue, we affirm the trial court's order dismissing Buchanan's complaint.

**BACKGROUND**

While in flight from the police, Buchanan's son jumped a fence abutting Buchanan's property and ran into Buchanan's home through a sliding glass door. Officer Madrigal, who was in pursuit, entered the home's back yard. Buchanan's dog, Sweetie, then came out of the home and into the back yard. Officer Madrigal shot Sweetie twice, killing the dog. Buchanan subsequently filed suit claiming negligence against Officer's Madrigal's employer, Miami-

2

Dade County (the "County"), and IIED against Officer Madrigal. Buchanan alleged that the County was vicariously liable for the negligence of Officer Madrigal, who was acting within the scope of his employment when he shot Sweetie. Concerning Officer Madrigal, Buchanan alleged that he "acted recklessly and/or intentionally, and [that] his conduct was extreme and outrageous." Buchanan further alleged that Officer Madrigal's conduct caused him severe emotional distress and mental anguish, including post-traumatic stress disorder.

The County and Officer Madrigal each moved to dismiss Buchanan's complaint with prejudice. Relevant here, Officer Madrigal asserted that he was entitled to dismissal of Buchanan's IIED claim because: (1) Buchanan did not allege that he was "present at the time" of the complained of conduct (i.e., the shooting), as required by this court's decision in M.M. v. M.P.S., 556 So. 2d 1140 (Fla. 3d DCA 1989); and (2) the claim was barred by sovereign immunity under section 768.28(9)(a), Florida Statutes (2020). Buchanan responded that under Williams, 575 So. 2d at 683, it was not necessary for him to have witnessed Sweetie being shot in order to state a claim for IIED—merely "seeing [Sweetie's] dead body" was enough.[1]

---

[1] Although Buchanan stated in his response to the motions to dismiss that Officer Madrigal's action resulted in his "emotional distress from seeing the

3

After a hearing, the trial court granted the County's and Madrigal's motions to dismiss. Relying on M.M., 556 So. 2d at 1140–41, the trial court found that Buchanan failed to state an IIED claim because he did not allege that he was present during the shooting. Because the presence requirement disposed of Buchanan's sole claim against Officer Madrigal, the trial court did not reach Officer Madrigal's alternative argument that Buchanan's claim against him individually was barred by sovereign immunity. As to Buchanan's negligence claim against the County, the trial court found that it failed as a matter of law because under section 768.28(9)(a), the County is not liable in negligence for the intentional, wanton, and willful acts of its employees. The trial court dismissed Buchanan's complaint with prejudice, and this appeal followed.[2]

## STANDARD OF REVIEW

"We review de novo a trial court's order dismissing a complaint with prejudice for failure to state a cause of action." K.R. Exch. Servs., Inc. v.

---

dead body," we note that Buchanan's complaint makes no factual allegation that he saw Sweetie's dead body.

[2] On appeal, Buchanan does not assert that the trial court improperly dismissed his complaint with prejudice. Additionally, because Buchanan makes no argument directed toward the trial court's dismissal of his negligence claim against the County, the issue is deemed abandoned. See Doe v. Baptist Primary Care, Inc., 177 So. 3d 669, 673 (Fla. 1st DCA 2015).

4

Fuerst, Humphrey, Ittleman, PL, 48 So. 3d 889, 892 n.4 (Fla. 3d DCA 2010).

"In doing so, we assume all of the allegations in the complaint are true," Calderon v. Vazquez, 251 So. 3d 303, 304 (Fla. 3d DCA 2018), "as well as all reasonable inferences drawn from those allegations," Broz v. R.E. Reece, 272 So. 3d 512, 513 (Fla. 3d DCA 2019).

**ANALYSIS**

On appeal, Buchanan does not challenge the general proposition stated in M.M. that in order to state a claim for IIED based on his own emotional distress, a plaintiff must be present when the alleged extreme and outrageous conduct is directed toward a third party.[3] See M.M., 556 So. 2d at 1140–41 (applying section 46(2)(a) of the Restatement (Second) of Torts (1965) and affirming dismissal of parents' complaint for IIED because parents were not present when admitted offensive treatment of their daughter occurred). Instead, as below, Buchanan contends that the fact he was not present when Sweetie was shot and killed is not dispositive of his

---

[3] "To prove intentional infliction of emotional distress, the plaintiff must show: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Deauville Hotel Mgmt., LLC v. Ward, 219 So. 3d 949, 954–55 (Fla. 3d DCA 2017).

5

IIED claim because Williams, 575 So. 2d at 683, established an exception to the presence requirement for conduct involving display of pictures of "dead bodies."

In Williams, officers in the City of Minneola Police Department showed a videotape and photographs of a minor's autopsy to people outside of the police department. The minor's mother and sister sued the police department and the officers, relevantly alleging a claim for IIED based on the display of the pictures. Id. at 686. The Fifth District Court of Appeal reversed the summary judgment granted in favor of the defendants and held that a claim for intentional or reckless infliction of emotional distress "can lie for outrageous conduct involving pictures of the dead body of a plaintiff's spouse, child, sibling or parent, even though the plaintiff was not present at the display of the pictures." Id. at 690. The court reasoned that in situations involving a dead body, "our society . . . shows a particular solicitude for the emotional vulnerability of survivors regarding improper behavior toward the dead body of a loved one, and the special deference paid by courts to family feelings where rights involving dead bodies are concerned is central to our decision." Id. at 691. The court further explained that the plaintiffs could maintain their claim regardless of the fact that they were not present during the outrageous acts, distinguishing cases like M.M., because "[t]hose

6

opinions did not concern dead bodies or pictures of dead bodies and so did not call into operation the unique considerations which apply in such cases." Id. at 694.

We find Buchanan's argument that the exception to the presence requirement as set forth in Williams applies to the facts at hand unpersuasive. Buchanan cites to no case extending the holding of Williams to a plaintiff's subsequent sighting of the body of a deceased pet, after the complained-of outrageous acts or conduct have already occurred, and we are unable to do so here. Underpinning our conclusion is the well-established principle in Florida's jurisprudence viewing animals as personal property, despite the incontrovertible deep attachment owners feel toward their domestic pets. Indeed, "[w]hile a dog may be considered by many to be a member of the family, under Florida law animals are considered to be personal property." Kennedy v. Byas, 867 So. 2d 1195, 1197 (Fla. 1st DCA 2004) (quoting Bennett v. Bennett, 655 So. 2d 109, 110 (Fla. 1st DCA 1995)); see State v. Milewski, 194 So. 3d 376, 378 (Fla. 3d DCA 2016) ("Florida law considers animals to be personal property."); Levine v. Knowles, 197 So. 2d 329, 331 (Fla. 3d DCA 1967) (noting that "[u]nder the law of Florida, dogs are considered subjects of property or ownership"); Harby v. Harby, 331 So. 3d 814, 821–22 (Fla. 2d DCA 2021); Helmy v. Swigert, 662 So. 2d 395, 397

(Fla. 5th DCA 1995); see also Plowright v. Miami Dade County, 102 F.4th 1358, 1364 (11th Cir 2024) ("Florida law, like the law of most states, is clear that domestic animals are their owners' personal property.").

Furthermore, to the extent Buchanan argues that La Porte v. Associated Independents, Inc., 163 So. 2d 267 (Fla. 1964), stands for the proposition that in order to state an IIED claim a pet owner need not be present when the defendant's extreme and outrageous conduct is directed toward the pet, Buchanan's reliance is again misplaced. In La Porte, the Florida Supreme Court held that in an action for the willful and malicious killing of a dog, its owner's damages were not limited to the market value of the dog or its special or pecuniary value, but properly included the element of its owner's mental suffering. In reaching its conclusion, the Court reasoned that because the defendant's act in killing the plaintiff's dog (i.e., throwing a trash can at it) was "malicious and demonstrated an extreme indifference" to the plaintiff's rights, "[t]he restriction of the loss of a pet to its intrinsic value in circumstances such as the ones before us is a principle we cannot accept. . . . [W]e feel that the affection of a master for his dog is a very real thing and that the malicious destruction of the pet provides an element of damage for which the owner should recover, irrespective of the value of the animal . . . ." Id. at 268–69.

8

Importantly, La Porte did not concern itself with independent tort of IIED, but rather, addressed a claim for the malicious killing of a pet. Indeed, the Florida Supreme Court later stated in Metropolitan Life Insurance Co. v. McCarson, 467 So. 2d 277, 278 (Fla. 1985), that the issue of whether Florida recognized the tort of IIED was "not . . . directly before [it]" in La Porte. In any event, La Porte cannot stand for the proposition advanced by Buchanan that a dog's death need not be witnessed by its owner to state a claim for IIED because in La Porte the owner was present when the defendant hurled a garbage can at her dog, killing it. See Associated Indeps., Inc. v. La Porte, 158 So. 2d 557, 558 (Fla. 2d DCA 1963); 163 So. 2d at 267–68. Thus, La Porte does not assist Buchanan in his IIED claim.

## CONCLUSION

Buchanan's contention that the circumstances here are analogous to those involving outrageous conduct directed toward the dead body of a close human family member, and therefore his presence at the scene of the shooting was not required to state a claim for IIED, finds no support in Florida law. Accordingly, we conclude that the trial court did not err in finding that Buchanan failed to state a claim for IIED as a matter of law, and we affirm the trial court's dismissal of Buchanan's complaint with prejudice.

Affirmed.